# F. W. HOLLOWAY v. MISSOURI, KANSAS & TEXAS RAILROAD COMPANY, Appellant.

### Division One, December 30, 1918.

1. **ASSUMPTION OF RISKS: Federal Employers' Liability Act.** Contributory negligence is not a bar to recovery for personal injuries Federal Employers' Liability Act, but the law of the State as to assumption of risks is applicable as a defense unless there is a violation of the safety-appliance statutes. [WOODSON, J., dissenting.]

2. ———: ———: **Common Law of State.** The defense of assumption of risks as it existed at common law was left untouched by the Federal Employers' Liability Act except where a violation of a statute enacted for the safety of employees contributed to the injury, and if the Safety-Appliance Act has no application to the case the right of an injured employee to recover, where assumption of risks is pleaded, is to be determined according to the common law of the State in which the cause of action accrued.

3. ———: **Definition.** Under the common law as applied in Missouri assumption of risks stands upon contract, expressed or implied, and that law does not intefere with the employment of persons in the hazardous occupation of railway operation upon lines and with appliances reasonably fit for that purpose, nor with the reasonable exercise of the judgment of the employer in the construction, maintenance and operation of these facilities. [WOODSON, J., dissenting.]

4. ———: **Difference in Elevation and Grade of Tracks.** A difference in elevation between the main track and the passing track, and a difference of eighteen inches in their grade, well known to an experienced brakeman who attempted to descend from the main track for the purpose of mounting a local freight train moving on the passing track, was a condition of his employment, and if an additional danger he assumed the incidental risk.

5. ———: ———: **Duty of Company: Increasing Danger: Insecure Footing: Loose Joints.** If it was customary, or frequently necessary or convenient, for brakeman to mount the moving cars of freight trains as they passed over the side track, and such service was accepted by the company, the same principle of law by which the brakeman assumed the risk resulting from a permanent and unusual construction of the tracks imposed upon the company the duty of using ordinary care to avoid adding additional and unnecessary danger to the already hazardous situation. As the brakeman assumed the risk of descending from the main

track for the purpose of mounting a freight train moving on the lower passing track whose grade was also different, it was the duty of the company to make the intervening space over which he had to pass stable and secure, and not to maintain ballast of large stones insecurely set and covered by loose chat, and not to maintain the side track on broken or rotten ties, so that the cars gave down at the rail joints and by their violent movements tended to break his hold on the grab-iron.

6. ——: ——: ——: **Question for Jury.** Where there is evidence tending to show that the railroad company failed to exercise ordinary care to avoid increasing the danger in the conditions assumed by the employee, and on the contrary testimony tending to prove that all the conditions were perfect, considered from the standpoint of unusual construction, the question of the company's negligence and the employee's assumption of risks should be submitted to the jury.

Appeal from Henry Circuit Court.—*Hon. C. A. Calvird,* Judge.

AFFIRMED.

*J. A. Galbreath, Peyton A. Parks, W. E. Owen,* and *Jos. W. Jamison* for appellant.

(1) Plaintiff's petition alleges that in the space between defendant's main-line track and passing track there was a piece of rock ballast covered up and hidden from view by fine chat ballast. That when plaintiff undertook to mount a car, as it came by where he was, the chats and ballast "gave way under plaintiff's left foot on account of the bowlder and rocks just beneath the fine chat which had been sprinkled over them, which caused his foot to turn in under him and slide down the embankment while in the act of taking hold of the grab-iron of the car," etc. Plaintiff's own testimony shows that it was the turning of his foot on a single piece of ballast beneath the chat, through which his foot sank, as he attempted to board the car, that was the proximate cause of his injuries. His petition states no cause of action, and he offered no evidence proving or tending to prove actionable negligence. It was not alleged in the petition that it was not

reasonably necessary for defendant to construct its passing track on a lower grade 'than the main line track. There was no evidence offered tending to show that defendant knew, or by the exercise of reasonable inspection, might have discovered that the piece of rock ballast, which was covered with a layer of chat, and on which plaintiff's foot turned, causing him to fall, was lying in such position that it might cause such an accident if perchance a trainman in the performance of his duties, might place his foot upon the fine chats above said heavier piece of ballast. Plaintiff testified that the piece of rock on which his foot turned was concealed beneath a layer of chat so it could not be seen, and that his foot sank down through the chat as it came in contact with the ballast. Morris v. Pryor, 198 S. W. 817; Kane v. Railway Co., 251 Mo. 45; Current v. Ry. Co., 86 Mo. 66; Williams v. Ry. Co., 119 Mo. 324; Newlin v. Ry. Co., 222 Mo. 375. (2) The question as to the proper construction of defendant's main line and passing track at Calhoun, all physical conditions being considered, was an engineering question. Tuttle v. Milwaukee Ry., 122 U. S. 189; Potomac F. & P. R. Co. v. Chichester, 68 S. E. (Va.) 404.

*Wilkerson & Barnett* and *Sizer & Gardner* for respondent.

(1) The court did not err in setting aside the involuntary non-suit and in granting plaintiff a new trial. Stauffer v. Railroad, 243 Mo. 316. The party demurring admits the truth of the testimony to which he demurs, and also those conclusions of fact which a jury might fairly draw from that testimony. Forced and violent inferences he does not attempt, but the testimony is to be taken most strongly against him, and such conclusions as a jury might justifiably draw, the court ought to draw. Pawling v. United States, 4 Cranch. 219; Pleasants v. Fant, 89 U. S. (22 Wall.) 121; Turner v. Anderson, 260 Mo. 17; Williams v. Railroad, 257 Mo. 112. If the action of the trial court

in setting aside the nonsuit and granting a new trial (which is the same as overruling the demurrer to the evidence in the first place) was right for any reason, the action of the trial court will be sustained. Clarkson v. Garvey, 179 Mo. App. 9; State ex rel. Hartman v. Thomas, 245 Mo. 65. (2) The burden of appellant's contention is that the testimony failed to show that defendant company knew or by the exercise of ordinary care could have known that the boulders were underneath the chats at the place in question. It should be kept in mind that the defects alleged were structural defects; i. e., defects in the roadbed itself. This was defendant's own roadbed, constructed and built by the defendant and kept and maintained by it, and having been built and constructed by the defendant itself, defendant is charged in law with full notice and knowledge of the manner of its construction and of the materials placed therein. Cabanne v. St Louis Car Co., 178 Mo. App. 725; Cody v. Lusk et al., 187 Mo. App. 337; Tatman v. Railway, 96 Mo. App. 448; Young v. Shickle, H. & H. Iron Co., 103 Mo. 328. (3) Defendant owed the plaintiff the duty to use reasonable care to keep the roadbed and ways in reasonably safe condition, and what constitutes reasonable care must depend upon the surroundings and the dangers to be fairly apprehended and encountered. 26 Cyc. 1125; Hall v. Mo. Pac. Ry. Co., 18 S. W. (Mo.) 426; Rifley v. Minneapolis & St. R. Co., 72 Minn. 469. Maintaining a soft, spongy and springy roadbed will justify a jury in finding such action to be negligence. Baker v. Great Northern, 83 Minn. 184; Culver v. South Haven Ry. Co., 138 Mich. 443; Hollenbeck v. Mo. Pac. Ry. Co., 141 Mo. 97; Swadley v. Mo. Pacific, 118 Mo. 269. (4) The question of assumption of risk by the plaintiff was one for the jury. The duty imposed is to use reasonable care and diligence to furnish safe tracks for its employees, and the plaintiff has a right to assume that this has been done. Lake Erie etc. Co. v. Morrissen, 177 Ill. 376; Hach v. St. Louis etc. R. Co., 208 Mo. 581. Where a brakeman is injured

by reason of rotten and defective ties, such a condition of the roadbed constitutes negligence. Chesapeake & N. R. Co. v. Venable, 111 Ky. 41; McFee v. Vicksburg S. & P. R. Co., 42 La. Ann. 790; Gulf Ry. Co. v. Pettis, 69 Tex. 689; Chesapeake & Ohio Ry. Co. v. DeAtley, 241 U. S. 310. An employee does not assume a risk unless it was apparent to him at the time and the danger was fully appreciated. And he has a right to assume that the master has furnished him a reasonably safe place to work, and the danger must be so glaring and threeatening that an ordinarily prudent man would not have attempted the work in hand. Hurst v. K. C., etc. Co., 163 Mo. 309; Franklin v. M., K. & T., 97 Mo. App. 473; Huhn v. Mo. Pac., 92 Mo. 440; Soeder v. Railroad Co., 100 Mo. 673.

BROWN, C.—This is a suit for personal injuries received by plaintiff on March 2, 1914, while in the employment of defendant as brakeman and assisting in the operation of a local freight train on defendant's railway, running from the city of Nevada, Missouri, to the city of Sedalia, Missouri. The injury was the result of falling from a car which he was attempting to board while in motion. He was thrown beneath the car, the wheel of which passed over and injured his right leg, so that it was necessarily amputated above the knee. The train was at the time engaged in the transportation of interstate freight and the suit is expressly founded upon the Federal Employers' Liability Act. The petition, which was filed in the Henry County Circuit Court August 6, 1914, returnable to the next September term, states that "defendant owed to plaintiff the duty to exercise ordinary care to furnish plaintiff with a reasonably safe place to work, and further owed plaintiff the duty to exercise ordinary care to see that its track and roadbed and ways and means of transportation were reasonably safe for plaintiff to perform his duties; that defendant owed plaintiff the further duty to keep its passing tracks and its main line tracks on the same level or grade, as was the

custom at other places upon its own road, and as was the custom of other railroads in the State of Missouri, and to keep the spaces properly ballasted and in reasonably safe condition; that on account of the failure of the defendant to perform its duties in these respects, plaintiff was injured.''

It then charges the failure to perform such duty as follows:

''(1) That the train which the defendant was then and there operating was negligently overloaded as to cars and tonnage, considering the engine and the heavy grades of the defendant's tracks from the water tank where said train was compelled to stop for water, and the station where said train had to go on to the passing track to clear the main line, which overloading necessitated the dangerous practice of making a run for heavy grade between the tank and the station; and on account of such negligence plaintiff was required to go ahead of said train to open the switch and to mount said train while it was making a run for said grade.

''(2) That the defendant was further negligent, in whole or in part, by keeping and maintaining the space between the main line and passing track in a defective condition, and not in a reasonably safe condition for plaintiff to perform his duties, in that said space was steep and sloping from top of ties on main line to end of ties on passing track, and not on the same level or grade as the main line, and the sloping space covered with fine chat ballast over large and rough rock ballast, deceptive and hidden from plaintiff's view while attempting to walk on said space and to use same in mounting car.

''(3) That the ties of the passing track were' rotten, old and defective, and the joints of rails uneven and low, and spikes in ties were loose and rails uneven and unsupported by rotten and defective ties, so that the cars when passing over same would sway and rock violently, thereby making said passing track not reasonbly safe.''

"That the defects and dangers as aforesaid were known to the defendant, its officers, agents and employees, or by the exercise of ordinary care could have been known in time to have avoided injury to plaintiff; that said acts of negligence, acting separately or conjointly with each other, caused the injury to plaintiff, as aforesaid, to his damage in the sum of $30,000."

Appellant answered by general denial, with pleas of contributory negligence and assumption of risk, and also a plea that plaintiff had full opportunity and liberty to select, and it was his duty to select, a safe place from which to board the car, and that, all the conditions being open to his observation, he chose the time, place and method from which the injury resulted. These affirmative matters were put in issue by replication.

The cause was tried at the May term of the Henry Circuit Court before a jury, and at the close of all the evidence for both plaintiff and defendant the court instructed the jury to find for the defendant, upon which the plaintiff took a nonsuit with leave, filed motion to set it aside, which was continued until the September term, 1915, when it was sustained and the judgment of nonsuit set aside, from which order and judgment this appeal is taken.

The facts developed by the plaintiff and necessary to the determination of this appeal are as follows:

The train on which the plaintiff was employed as head brakeman at the time of his injury, was a local freight running north from Nevada to Sedalia, which constituted what is called a local division. The defendant had, with the exception of a few months, been in the employ of the defendant company in similar service fourteen years. Although this was his first run on the local freight he had been employed upon other trains, including a through freight running upon this same track between Sedalia and Parsons, Kansas, for several years, and was well acquainted with defendant's tracks at this point, to which he testified freely.

The accident occurred at the Calhoun station, where there was a passing track about sixty cars in length, leading out of the main track at about one hundred and fifty or one hundred and sixty yards north of the tank of a water station. Running north of the tank was a stream, crossed by a bridge, and the grade was practically level to the point of the switch. After passing this, the grade of the main track rose toward the north to a point near the station house, which was situated on a road which crossed the tracks at a point about forty car-lengths north of the switch, and, therefore, about twenty car-lengths south of where the passing track reentered the main track, was day time, and the plaintiff's train, going north, was closely followed by a local passenger, and both were to meet at that point a through passenger going south, and having the right of way. It was necessary therefore for the two local trains to take the passing track. The plan or method was for the local trains to move onto the passing track, where the rules required them to be five minutes ahead of the time of the other train. The grade of this passing track at the switch where they were to enter it from the south did not rise with the uniform grade of the main track, but ran level for perhaps ten car-lengths, and then rose to meet the grade of the main track at the crossing, so that where the accident occurred it was nearly or quite eighteen inches below the grade of the main track. The nearest rails of the two tracks were about ten feet apart, and the ties beneath them projected about eighteen inches, leaving seven feet between the ties.

The local freight came up to the tank and stopped for water, and the plaintiff got off and walked along the main track ahead of the engine across the bridge, and past the switch about seven car-lengths. There were twenty-five cars in the train and one of them had a hot box, and it had been his plan to get on the caboose when it should stop, where he would get the necessary tools and brass to fix it, and then walk up

to the car for that purpose. He was walking in the middle of the main track where he had walked frequently before, and the footing was smooth and good. He looked back and saw that his train had moved and that the local passenger was coming to the tank about two hundred yards behind it. He walked on up the track for about five car-lengths more, and then changed his mind about waiting for the caboose, determining instead to get on to one of the freight cars and ride up the track, to cut the highway crossing should it be necessary for the train to stand across it more than five minutes. He also remembered that there was to be a car of horses on the house track to be taken into the train and it would be necessary for him to attend the engine and do the switching, for which it would be necessary to use the main track, after the train for which they were waiting should pass. By this time his train was passing him. He turned toward it and when near enough he reached for and seized the grab-iron with the left hand and started to run with the train until he could seize it with his right and swing himself up to the stirrup. He had gone about two or three steps when something slipped or gave way under his feet, the car gave a lurch which took the grab-iron from his hand, and he fell and rolled under the train, which pased over his leg.

The ballast consisted of crushed stone covered with what is described in the evidence as chat, which seems to be the fine stuff which passes through the screen over which the product from the rock crusher is run, and the name is also applied to a similar product from the lead and zinc mines, which is sometimes used for such purposes. The evidence tends to show that some of the rock used in the ballast was large. Four pieces picked up from near this place were brought into court, but the record gives us little information from which to estimate thir size. We have to assume that they were uncommonly large for use in such construction. The witness felt his foot crushing through the chat and a stone roll from under it when he stepped on the bal-

last outside the rail, and he lost his footing. There is testimony that these larger stones were concealed beneath the chat which escaped from beneath his foot. There was evidence that the chat would escape from between these stones, leaving hollow spaces covered by an apparently firm surface.

The evidence also tended to show that some of the ties under the passing track were defective, unballasted, broken and without firm support, and the spikes loose, so that the rail joints would sink under the train, giving the car passing over them a motion which made it difficult to hold on to the grab-iron or ladder on which the trainmen were compelled to climb in the discharge of their duties. There was also evidence tending to show that the space between the toe of the ballast in the main track and the ties of the passing track was in an uneven condition and soft. There was no evidence tending to show that the main track was not in perfect condition to stand the traffic that passed over it, and the respondent testified that it was good walking between the rails.

I.  The appellant is an interstate carrier by rail, and was engaged in interstate transportation with respect to the matters involved in this controversy. The suit stands upon the provisions of Sections 1 and 2 of the Employers' Liability Act of April 22, 1908, and is for damages resulting to the respondent, a brakeman engaged in handling its train, from the loss of a leg crushed under the wheels of one of its cars.

**Assumption of Risks.**

This appeal is from an order of the court setting aside a nonsuit suffered by respondent by reason of a peremptory direction to the jury to find for the defendant, given after the evidence of both parties had been heard. The only question, therefore, is whether the evidence should have been submitted to the jury. Although contributory negligence is pleaded in the answer, Section 3 of the act provides that it shall not be a bar

to the action, so that it will be unnecessary to notice that question.

This provision as to contributory negligence does not, however, apply to the assumption of risk, for this was separately treated in the next section (4), which is as follows: "That in any action brought against any common carrier under and by virtue of any of the provisions of the act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." The. safety appliance act having no application to this case, it follows, as has been frequently decided by the Supreme Court of the United States, that the assumption by respondent of the risk attending the condition affecting the accident would constitute a complete defense. [Seaboard Air Line v. Horton, 233 U. S. l. c. 492 *et seq;* Railroad v. Vreeland, 227 U. S. 59; Railway v. Crockett, 234 U. S. 725; Railway v. Hesterly, 228 U. S. 702; Railway v. Washington, 222 U. S. 370; Railway v. De Atley, 241 U. S. 310; Jacobs v. Southern Railway, 241 U. S. 229.]

It is evident that when Congress, in the exercise of its plenary constitutional power, enacts a law relating to a particular subject, the statute so enacted is not only paramount to all State legislation upon that subject, but the legislative power of the State to occupy the same field ceases. This question is fully discussed in the cases we have cited, as well as in many other decisions of the same court which they cite and with which the bench and bar are familiar. The field is the liability of interstate carriers by rail for injuries to their employees and the enactment of the Federal law substituted it for all State laws on the same subject. The defense of assumption of the particular risk out of which the injury has grown having been left by the act untouched as it existed at common law, and full jurisdiction having been conferred upon the State

courts for its enforcement, it follows that it must be determined and judicially enforced according to the common law existing in the State in which it accrued as if the act had not been passed. This is the doctrine distinctly announced by this court in Fish v. Railroad, 263 Mo. 106, 123, and Williams v. Pryor, 200 S. W. 53.

The common law, as expounded and administered in Missouri, expressed with sufficient accuracy for the puposes of this appeal, is that assumption of risk stands upon contract, expressed or implied, while negligence lies in tort, and that public policy forbids the judicial enforcement of contracts authorizing tortious acts upon one's person. Upon this principle we have held that injury by negligence cannot be justified by contract. The rule does not interfere with the employment of persons in the hazardous occupation of railway operation upon lines and with appliances reasonably fit for that purpose, nor with the reasonable exercise of the judgment of the employer in the construction, maintenance and operation of these facilities.

In this case the petition complains that the passing track upon which the train was running at the time of the injury was lower than the main track and his evidence tends to show that there was a difference of some eighteen inches in the grade, so that when he attempted to mount the passing car from the main track he was compelled to descend that distance to reach it. This situation might have been created by the appellant to save cost of construction, to obtain momentum for trains passing from the water tank into and up the grade of the side track, or to protect the main track and through trains running thereon from the possible breaking loose of cars standing or running on the siding. The reason in this connection is immaterial. The physical fact was there and open to observation. The respondent knew it, and there is no pretense that during the years he had been accustomed to run over it he had ever complained. So far as the difference in gradient and the resulting difference of elevation in these two tracks is concerned he knew it and accepted it

as one of the conditions of his employment. If it created an additional danger in a dangerous occupation, his own experience and evident intelligence compel us to assume that he fully recognized it and assumed the incidental risk.

II. The testimony tends to show that it was customary, and frequently necessary or convenient, in the performance of the work in which respondent was engaged at the time and place of the accident, to mount the moving cars as they passed over the siding, and that the service was accepted by the appellant. The same principle of law by which he is held to have assumed the risk resulting from the permanent and perhaps unusual construction of the tracks, charges the appellant with the duty of recognizing the situation so created and using ordinary care in its maintenance with reference to it, so that additional and unnecessary danger shall not be added to an already hazardous condition. In this respect the duty of ordinary care has reference to the existing situation and its dangers. Dangerous construction cannot be made an excuse for negligent maintenance. The difficulty of mounting a car passing along this low track from a position upon the high one ought not to be embarrassed by any inordinate and unnecessary insecurity of the footing from which the start must be made, nor by any unnecessary condition tending to shake off one who has attained the hold 'that he seeks. If there is a path between the two tracks from which the operator may make the attempt it should be kept clear from stumbling blocks so far as ordinary care will accomplish that object.

Upon these features of the case the evidence is irreconcilably conflicting. On the one hand it is to the effect that the ballast outside the rails of the main track over which the respondent was required to pass, was unnecessarily unstable and insecure; that the track over which the moving train was passing was laid on old, imperfect and in some cases broken ties in

Holloway v. M. K. & T. Ry. Co.

which the spikes were so loose that they could be drawn with the hand, and that the joints between the rails were low, loose and unstable, all of which had the effect of producing violent and unusual movements of the cars; that the little space left unoccupied between the ballast of the main track and sides of the passing cars was narrow and difficult. On the other hand there was testimony tending to prove that all these conditions were perfect, considered from the standpoint of usual construction. Such conditions are variable, and we are not prepared to say either that there is no evidence which should have been submitted to the jury that the appellant was negligent in the maintenance of its road in these respects, or that, if they should find it was so negligent, it is shown by the evidence to a legal certainty that the respondent knew the resulting conditions, and recognized and appreciated the danger. These questions should have been submitted to the jury.

It follows that the order of the trial court setting aside the nonsuit and granting a new trial is affirmed, and the cause remanded for further proceedings.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All concur; *Woodson, J.,* in separate opinion, *Graves, J.,* in result.

WOODSON, J. (dissenting).—I concur in the result reached by the opinion of our learned commissioner in this case, but dissent as to what is therein said regarding contributory negligence and the assumption of risks. I fully expressed my views upon those questions in the recent case of Johnson v. Waverly Brick & Coal Company, 205 S. W. 615, l. c. 617, paragraph three.