CLARENCE WEBBER v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant.—70 S. W. (2d) 863.

Division One, April 19, 1934.

12

*T. M. Pierce, J. L. Howell* and *Walter N. Davis* for appellant.

*Louis E. Miller* and *John F. Gibbons* for respondent.

14

HYDE, C.—This case, coming to the writer by reassignment, is an action for damages, under the Federal Employers' Liability Act (U. S. C. A., Title 45, Secs. 51-59), for personal injuries resulting from a fall while plaintiff was, as an employee of defendant, painting the Eads bridge, across the Mississippi River between Missouri and Illinois. The applicability of the Federal Act was admitted by defendant. Plaintiff had a verdict for $35,000,. and, from judgment entered thereon, defendant has appealed.

The negligence relied upon is shown by the following part of plaintiff's Instruction No. 1, authorizing a verdict, to-wit:

"If you find and believe from the evidence that the chain supporting the scaffold upon which plaintiff was working broke and caused the said scaffold to fall and caused plaintiff to fall and sustain injuries, and *that said chain,* at and prior to said time, *was weakened by rusting,* . . . *to such an extent that it was likely to break* and give way while being used to support the said scaffold and *that by reason thereof it was dangerous and not reasonably safe,* . . . and was likely to cause said scaffold to fall and to cause injuries to persons thereon, if you so find; and if you further find from the evidence that defendant knew, or by the exercise of ordinary care could have known, of said condition of said chain and said danger of injury thereby, if any, in time for the defendant, by the exercise of ordinary care, to have prevented said fall and said injuries and that defendant negligently failed to do so." (Italics ours.)

The defenses set up by defendant's answer, which also contained a general denial, were an unavoidable accident and assumption of risk. Defendant contends that the court should have sustained its demurrer to the evidence because plaintiff's own testimony showed conclusively that he knew of the insufficiency of the chain and assumed the risk of it breaking. Plaintiff's evidence was that on the day he was injured (August 23, 1929) he was working upon a scaffold on a stage suspended by chains attached to I beams of one of the approaches of the Eads bridge. A chain, on the end of the stage where plaintiff was working, broke and he fell about 25 feet to the ground. Plaintiff testified that he and another painter commenced working in the center of the stage and worked toward the west end; that two other painters began at the other end of the stage and worked toward the center; that the chain which broke was three-eighths of an inch in diameter and eight to ten feet long; that the end of the stage to which it was attached was raised about five inches higher than the other end; that as the men worked in that direction it made more weight upon that chain than upon those supporting the other end; that he noticed this condition (the high end) from twenty minutes to an hour before the chain broke but continued working toward it; that he had nothing to do with constructing or rigging the scaffold; that it was moved from place to place by other employees of the company; but that he usually did help raise it into place after it was moved.

Concerning the condition of the chain which broke and his knowledge of it, plaintiff testified as follows:

"Q. These chains that you refer to, Mr. Webber, I will ask you if you know or are able to state how long they had been in use by the Terminal Railroad Association? A. Three years, to my knowledge. . . . Q. Now, when you said this chain had been used for three years, you meant you had seen chains just like that used for three years? A. No; *that same chain.* . . . Q. You know that chain was used for three years? A. Yes, sir. Q. How do you know it? A. Because I worked there for three seasons. Q. And you saw the same size used, so you think the Terminal had just one chain or two chains? How do you know this particular one—tell the jury what mark distinguished it from other chains the same size? A. *It was rusted bad.* . . . Q. Now, did you ever take the precautions to discover exactly the size of it? A. Yes, sir; *I measured it.* Q. When? A. While working. Q. Well, when was it? A. About *in July, 1927.* Q. You measured a chain—where were you working then? A. We were working on the Merchants bridge. Q. Where? A. In North St. Louis. Q. Is that the same bridge you were working on when you got hurt? A. No, sir. Q. How far away was it? A. Oh, I don't know exactly; I should judge about two miles or more. Q. And *two years and one month before?* A. Yes, sir. Q. And

you measured a chain that was being used then to hold up the rigging or the scaffold that was on that job? A. Yes, sir. Q. And by reason of that you tell the jury this chain you were working on on the Eads bridge two years later and two miles away was the same thing? A. Yes, sir. Q. Did you put a mark on that chain? A. No, sir. Q. What was the difference between this chain and any other chain you worked with? A. *It had holes eat in it from rust.* Q. Oh, it had that in July, 1927, did it? A. Yes, sir. Q. And the reason you measured the chain in July, 1927, was because you really thought the chain was not proper for the use to which it was being put, didn't you? A. Well, *I knew the chain was too light for the amount of weight there was on it.* . . . Q. Mr. Webber, when did you first observe this chain was rusty? A. It was rusty in July when I examined it. Q. Was that in July, 1927? A. *July, 1927, it had rust holes in it then.* Q. Mr. Webber, did you know that this scaffold was going to fall? A. No, sir. . . . Q. Now, you noticed this one particular piece of chain, you say, for two years? A. Three seasons; yes, sir. Q. You had helped, in the course of those three years, to take it down and put it up a number of times, didn't you? A. Yes, sir. Q. And you noticed *it kept getting rustier and rustier all the time?* A. Yes; because it was exposed to the weather. Q. I understand; but whatever the cause of it, you say you noticed it kept getting rustier and rustier all the time? A. Yes; it kept getting rustier. Q. You said in the forenoon *it had rust holes in it?* A. Yes, sir. Q. All the way through? A. I don't know as they were all the way through. Q. But they were very deep in? A. *Pretty deep.* Q. And they led you to believe the chain wasn't safe? A. No, sir; not exactly. Q. Why did you tell us before noon it did and now tell us it didn't? Explain that to the jury. A. Well, I didn't know the chain would break. Q. You told this jury before noon that *you believed the chain was unsafe.* Now, are you going to change that testimony? A. *Yes; I said that.* Q. Did you mean it? A. Yes, sir. Q. Then you still mean it? A. *I still mean it.* Q. So that as you worked along with this old chain, you don't know how much longer they had had it there? A. I don't. Q. As you worked along with this old chain, you kept thinking the chain was unsafe? A. No, sir; I didn't think it was unsafe. Q. You believed it was perfectly safe, didn't you? A. Yes, sir. . . . Q. But tell the jury why you changed. A. I am absolutely sure that this chain was unsafe. Q. Well, you were just as sure then as you are now, weren't you? A. Well, I don't know; I am more sure now because I fell, it broke. Q. But before that you thought it was unsafe, you weren't sure about it, *but you thought it was unsafe?* A. *I thought so.''* (Italics ours.)

Since this is a case under the Federal Act in determining the application of the doctrine of assumption of risk we must follow the

decisions of the Federal courts. [Pryor v. Williams, 254 U. S. 43, 41 Sup. Ct. 36, 65 L. Ed. 120, reversing Williams v. Pryor, 272 Mo. 613, 200 S. W. 53; Toledo, St. Louis & Western Railroad Co. v. Allen, 276 U. S. 165, 48 Sup. Ct. 215, 72 L. Ed. 713, reversing Allen v. Ross (Mo.), 292 S. W. 732; Seabord Air Line Railroad Co. v. Horton, 233 U. S. 492, 58 L. Ed. 1062, 34 Sup. Ct. 635, L. R. A. 1915C, 1; Hoch v. St. Louis-San Francisco Ry. Co., 315 Mo. 1199, 287 S. W. 1047; Martin v. Wabash Ry. Co., 325 Mo. 1107, 30 S. W. (2d) 735; York v. St. Louis-San Francisco Ry. Co., 333 Mo. 105, 62 S. W. (2d) 475.] Under our own rulings, a servant does not assume the risk of injury from conditions caused by the master's negligence, but his action in continuing to risk the danger arising therefrom is only considered as contributory negligence. [Clift v. St. Louis-San Francisco Ry. Co., 320 Mo. 791, 9 S. W. (2d) 972; Holloway v. Mo.-Kan. & Tex. Railroad Co., 276 Mo. 490, 208 S. W. 27; Williams v. Pryor, 272 Mo. 613, 200 S. W. 53; Fish v. C., R. I. & P. Railroad Co., 263 Mo. 106, 172 S. W. 340, Ann. Cas. 1916B, 147; Patrum v. St. Louis-San Francisco Ry. Co., 259 Mo. 109, 168 S. W. 622; Honea v. St. Louis, I. M. & S. Railroad Co., 245 Mo. 621, 151 S. W. 119.]. The Federal rule is different and what would be only contributory negligence, under our State rule, may under it constitute an assumption of the risk. It is said: *"Knowledge of the risk* is the watchword of the defense of assumption of the risk; want of due care in view thereof is that of contributory negligence; and these are distinct conceptions." [C., N., O. & T. P. R. Co. v. Thompson (C. C. A.), 236 Fed. 1, l. c. 9; see, also, Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062; Erie Ry. Co. v. Purucker, 244 U. S. 320, 37 Sup. Ct. 629, 61 L. Ed. 1166; Schlemmer v. B., R. & P. Railroad Co., 220 U. S. 590, 31 Sup. Ct. 561, 55 L. Ed. 596; 2 Roberts, Federal Liabilities of Carriers, 1623, sec. 836, 1636, sec. 841.] ■ It is now very definitely settled by the Supreme Court of the United States that, in cases arising under the Federal Employers' Liability Act (except where the Safety Appliance Acts are violated), the doctrine of assumption of risk is applied, not only to ordinary risks which are naturally incident to the occupation (covered by our State rule), but also to extraordinary risks which result from the negligence of the employer, including negligence, in failing to provide a safe place to work or suitable appliances with which to work. [Gila Valley, Globe & Northern Ry. Co. v. Hall, 232 U. S. 94, 58 L. Ed. 521, 34 Sup. Ct. 229; Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062; Chesapeake & Ohio Ry. Co. v. Proffitt, 241 U. S. 462, 36 Sup. Ct. 620, 60 L. Ed. 1102; Jacobs v. Southern Ry. Co., 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970; Chesapeake & Ohio Railroad Co. v. De Atley, 241 U. S. 310, 36 Sup. Ct. 564, 60 L. Ed. 1016; Erie Railroad Co. v. Purucker,

244 U. S. 320, 37 Sup. Ct. 629, 61 L. Ed. 1166; Boldt v. Pa. Railroad Co., 245 U. S. 441, 38 Sup. Ct. 139, 62 L. Ed. 385; Pryor v. Williams, 254 U. S. 43, 41 Sup. Ct. 36, 65 L. Ed. 120; Southern Pacific Co. v. Berkshire, 254 U. S. 415, 41 Sup. Ct. 162, 65 L. Ed. 335; Toledo, St. Louis & Western Railroad Co. v. Allen, 276 U. S. 165, 48 Sup. Ct. 215, 72 L. Ed. 513; D., L. & W. Railroad Co. v. Koske, 279 U. S. 7, 49 Sup. Ct. 202, 73 L. Ed. 578; Chesapeake & Ohio Ry. Co. v. Kuhn, 284 U. S. 44, 52 Sup. Ct. 45, 76 L. Ed. 157.]

The risk in this case was not an ordinary risk arising out of the plaintiff's employment but must be classified as an extraordinary risk arising out of his employer's negligence. The principles upon which the assumption of such risks, under the Federal Act, must be determined are those of the common law. [36 C. J. 689, sec. 892.] They are stated by the United States Supreme Court, as follows:

"According to our decisions, the settled rule is, not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them." [Chesapeake & Ohio Railroad Co. v. De Atley, supra.]

"The employee . . . is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employee becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it. [Gila Valley, G. & N. Railroad Co. v. Hall, supra.]

"When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty." [Seaboard Air Line Ry. Co. v. Horton, supra.]

"Where the elements and combination out of which the danger arises are visible it cannot always be said that the danger itself is so apparent that the employee must be held, as matter of law, to understand, appreciate, and assume the risk of it. . . . The visible

conditions may have been of recent origin, and the danger arising from them may have been obscure. In such cases, and perhaps others that could be stated, the question of the assumption of the risk is plainly for the jury. But where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess,· and both the conditions and the dangers are obvious to the common understanding, and the employee is of full age, intelligence, and adequate experience, and all these elements of the problem appear without contradiction, from the plaintiff's own evidence, the question becomes one of law for the decision of the court." [Butler v. Frazee, 211 U. S. 459, 29 Sup. Ct. 136, 53 L. Ed. 281.]

In two very recent decisions the United States Supreme Court, even though there was no evidence of actual knowledge of the defective condition of the place of work upon the part of the injured employee, nevertheless, held that such employee must have known the condition and must have understood the danger and therefore, as a matter of law, assumed the risk, because both the defects and the dangers therefrom were obvious and of long standing. In Delaware, N. & W. Railroad Co. v. Koske, 279 U. S. 7, 49 Sup. Ct. 202, 73 L. Ed. 578, plaintiff, a switchman, was injured by stepping into an open drain while jumping off of an engine. The court said:

"There was nothing obscure or of recent origin about the place where he was injured. The conditions were constant and of long standing. The evidence requires a finding that he had long known the location of the drain and its condition at the place in question. The dangers attending jumping from engines in the vicinity of the drain, especially in the dark, were obvious. Plaintiff must be held to have fully understood and appreciated the risk."

In Northwestern Pacific Ry. Co. v. Bobo, 54 Sup. Ct. 263, it was contended that plaintiff's deceased husband, a bridge tender, fell because of an unsafe condition of the bridge, due to not having proper guard rails on steps leading to the top of the bridge, which it was necessary for him to use in his work, and also in permitting the steps to become worn and uneven so that they sloped, allowed water to collect in depressions, and became slippery. It was shown that decedent worked at night and had never ascended the stairway during the daytime. The Court of Appeals held that "the evidence was insufficient to show that decedent knew of the defects described, or that the conditions under which he was employed were such that he must have known them." In reversing this decision the United States Supreme Court said:

"With this conclusion we cannot agree. The deceased had gone up and down these open stairs very many times from August to February. He had a proper lantern by the light of which he could

easily see the alleged defects. He must have been aware that moisture frequently accumulated. Also often during the summer and early autumn there was adequate sunlight before 5 o'clock A. M. to disclose the real conditions. No suggestion is made of any complaint to the company concerning the stairs or platform. We think the record discloses enough to show that the decedent assumed any alleged risk.''

In this case there is no question of plaintiff's knowledge of a defective condition. His knowledge, of all of the essentials required by his instruction (hereinabove quoted and italicized) to be found to constitute negligence on the part of defendant, was at least as complete as defendant's knowledge thereof could possibly have been. It is said: ''Ultimately the question becomes one of comparative knowledge; if an employee is in as good position as his employer for ascertaining and understanding the situation, and equally well knows and appreciates the conditions, he cannot be allowed to complain for injuries sustained by working therein.'' [18 R. C. L. 685, sec. 173; see, also, McFarland v. C. & O. Ry. Co. (Ky.), 197 S. W. 944.] Is that not the situation here? Plaintiff's positive admissions are that, for more than two years, he ''knew the chain was too light for the amount of weight there was on it,'' that, in addition to knowing that the chain was too light he knew, during all that time, there were deep rust holes in it; and that he noticed that it kept getting rustier and rustier. What more could his employer have known? Plaintiff suggests nothing more in the requirements he states in his instruction as to what knowledge of defendant would be a basis for finding it negligent. Plaintiff never gave any of this information which he had to his employer. Of course, to have assumed the risk plaintiff must have both known of the condition and appreciated the danger. ''When, however, a peril is obvious or so patent as to be readily understood by the employee by the reasonable use of his senses, having in view his age, intelligence, and experience, he will not be heard to say that he did not realize or appreciate it.'' [18 R. C. L. 694, sec. 179.]

It is true that plaintiff said that he did not know the chain would break and that since it had broken he was more sure that it was unsafe than he was before but, nevertheless, after saying that he did not know, he twice reaffirmed his statement that before the chain broke he thought it was unsafe. After admitting that he knew the chain was too light for the weight it had to hold (even if it had been a sound chain), that he saw also that it had deep rust holes in it, that he saw this condition getting worse (the weak chain getting weaker), and that he thought it was unsafe, what more appreciation of the danger could there be on his part? Does not saying that he thought it was unsafe amount to saying that he appreciated its danger? If he had not said so, it would be difficult to understand how anyone

positive that a chain, supporting the scaffold where he worked, was too light for the weight it was required to hold, and in addition to that discovered deep rust holes in the chain, would not appreciate the danger and think it was unsafe. A chain is not a complicated device. Anyone must know that holes in the links of a chain would tend to weaken it to some extent, particularly a man who relied upon it to hold his place of work suspended in the air.

It is further contended that on the day plaintiff was injured there was an unusual condition which he did not know about, namely, that the end of the stage where the chain broke was raised five inches higher than the other end, by reason of which more weight than usual was thrown upon the chain, as the men worked toward that end. A somewhat similar contention was considered by the United States Supreme Court in Southern Pacific Ry. Co. v. Berkshire. 254 U. S. 415, 41 Sup. Ct. 162, 65 L. Ed. 335, where an engineer was killed, as he leaned out of his cab, by striking his head against the arm of a mail crane at the side of the track. The basis of the action was that the crane was negligently located but the court held that the engineer, knowing its location, assumed the risk, although it was contended that he did not appreciate the danger. The court said:

"The only element of danger that he may not have appreciated was the precise distance which the point of the crane would reach. But an experienced railroad man cannot be supposed to have been ignorant that such a projection threatened danger and, knowing so much, he assumed the risk that obviously would attend taking the chances of leaning well out from the train."

Plaintiff, here, said that he noticed one end being five inches higher, before the chain broke. Although he was not certain whether he saw it an hour before or only about twenty minutes, nevertheless, he had ample time to have suggested that it should be remedied. We do not say that this alone would be an assumption of the risk under all circumstances, but after noticing it, he continued to work toward that end, although he said that as the men worked closer to that end more weight was thrown upon the chain. We do not think that the evidence was sufficient to show that the slight difference in elevation was a proximate cause of plaintiff's injuries. Plaintiff usually helped pull the stage into place when it was moved and had on the evening before he was injured helped to pull it up at the point from which he fell. There is no evidence that there was ever any particular effort made to get the floor of the stage absolutely level or that a difference of five inches in the height of the two ends would substantially increase the strain on the chain. It was not a condition unexpectedly arising which would create a sudden emergency as in Doyle v. St. Louis Merchants' Bridge Terminal Ry. Co., 326 Mo. 425, 31 S. W. (2d) 1010. The method of work on this occasion was the same as had been

used throughout the whole season. From plaintiff's evidence, it would seem that for all the men to be near one end would have more effect on the chain than a slightly higher elevation of one end over the other. In any event, the situation required a chain which would withstand a mere slight additional strain, such as a difference in position could cause, and if plaintiff, already knowing that the chain was too light, thinking it unsafe, and noticing it being weakened all the time by further rusting, continued to work, without complaint or suggestion to his employer, in a manner which would obviously make the already known unsafe condition still more unsafe, he must undoubtedly be held to have assumed the risk, under the rule of the Federal courts which we are bound to follow in this case based upon the Federal Act.

The judgment is reversed. *Ferguson* and *Sturgis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.*, absent.