O. W. WISER, Respondent,

v.

MISSOURI PACIFIC RAILROAD COM-
PANY, a Corporation, Appellant.

No. 45705.

Supreme Court of Missouri,

Division No. 2.

April 8, 1957.

Harold L. Harvey, St. Louis, Hilary A. Bush, Fred A. Murdock, Johnson, Lucas, Bush & Gibson, Kansas City, for appellant.

Gardner & Gardner, Monett, for respondent.

EAGER, Presiding Judge.

This is a suit for personal injuries instituted under the Federal Employers' Liability Act. 45 U.S.C.A., Ch. 2, § 51 et seq. The verdict and judgment were for plaintiff in the amount of $10,000; no motion for new trial was filed, but defendant did file, and the court overruled, a motion for judgment in accordance with its motion for a directed verdict. The present appeal is from that ruling and the sole question presented is whether plaintiff made a submissible case. This being true, we must necessarily consider the evidence from the standpoint favorable to plaintiff. Malone v. Gardner, 362 Mo. 569, 242 S.W.2d 516, 520.

Plaintiff was a conductor in the employ of defendant, and had been an employee for approximately 35 years. At the time in question he was the conductor on a freight run from Pleasant Hill, Missouri, to Ft. Scott, Kansas. The crew consisted of the engineer, the fireman, the conductor, a "head brakeman," and a "rear brakeman"; the latter rode in the caboose with the conductor. This particular train left Pleasant Hill at 3:55 A.M. on June 7, 1955; it consisted of 54 cars, a diesel locomotive and the caboose. Some of the cars were "bad order" cars, bound for the shops at Wichita. At least one of these was a car located about 12 or 15 cars from the caboose from which the right door had been torn off; this door had been laid flat inside the car, on the floor. The train had orders to take a switch, more specifically the "passing track," at Ovid, Missouri, to let a north-bound train pass. It reached Ovid about 5:10 A.M., well after daylight, and proceeded on to the passing track, which was sufficiently long to accommodate the train. That track was located easterly from the main line, or on the left as one proceeded south. As shown in the evidence, and conceded in defendant's brief, the rules of defendant required the crew to inspect a train at every opportunity on the road, including stops, by walking along each side and looking for hot boxes, "brake rigging down," or any other observable defects. When this train stopped on the passing track, plaintiff alighted and started up the right side of the train southward on such an inspection; he was thus between the passing track and the main line. Considerable was said about the duties of the rear brakeman and what he was doing, but we regard this as wholly immaterial; clearly, plaintiff was performing one of his proper and required functions.

At this point it becomes necessary to describe the track and right of way more particularly. In so doing we use both the evidence and several photographic exhibits. The main line was somewhat higher than the passing track, and the two tracks were parallel. The rock ballast on the main line was coarser or larger than that on the passing track; it was described as "B" ballast, and, as plaintiff said, the rocks were perhaps the size of hickory nuts. On the passing track the ballast was "chat" or fine gravel, said to be from the mines around Webb City. The two kinds of ballast met in a more or less straight line between the tracks; from the photos it would seem that this meeting place was nearer to the passing track, and that there was perhaps less than two feet of chat ballast beyond the ends of the ties of the passing track. The evidence was that the chat ballast was rather "firm" to walk on, more so than the larger ballast on the main line. This chat beyond the end of the ties of the passing track constituted a sort of walkway for the

making of such inspections and perhaps for other purposes.

On this particular morning when plaintiff reached the car with the door off, referred to previously, he noticed that the corner of the loose door was sticking out of the car about 30 inches toward the main track. He testified that it was his duty to try to put it back and get it out of the way, and that he had no time to get assistance. He further testified: that he took hold of the protruding corner of the door with both hands, raised it up and "made a shove"; that just as he "was in the shove," his right foot "rolled" on him— he felt something under his foot, his foot did not slip, but nevertheless his foot went out from under him, and he went down on his knees "in a twist"; as he expressed it, his footing "gave way"; he immediately felt a pain like a ball of fire across his lower back and down his leg. He also caught his hand under the corner of the door and it was mashed and cut. He further testified that after he fell he looked at the ground where he had been standing and saw a hole in the chat ballast about 2 or 2½ inches deep and 3 or 3½ inches across, "right in the pathway where I was walking," and where he had been standing when making the shove; that he also saw, about a foot or a foot and a half away from the hole, a "boulder," of "slate-like" form, real hard, about 4 or 4½ inches in diameter, and somewhat round. He further said, referring to his fall and particularly to the rock, that: "I'd say it just rolled." He also said that he had not seen this rock prior to his fall, and that it was unusual to see "rocks" where you walk. After this incident he proceeded on to the engine, tried to find a first-aid kit for his hand, without success, and returned to the caboose where he wrapped up his hand as best he could and finished the trip. Much was made at the trial of plaintiff's failure to complain of his back for a substantial time, but we are in nowise concerned with that here. Our concern here is with the "boulder" (a term not conceived by us, but used and appar-

ently insisted upon by plaintiff's counsel at the trial and here), the circumstances surrounding its presence at that spot, and whether its presence constituted negligence. No witness except plaintiff had ever seen it, and he only during the fleeting moments described.

The evidence is not clear as to how this rock (as we shall usually call it) came to be there. Plaintiff's counsel say that the plaintiff testified that such slag rocks were deposited *at that point* as ballast several years previously. We do not so read the evidence. What he did say was that he helped on a work train "several" years previously which hauled similar "slag rock" to the "Marmaton Bottoms" on the main line, about half a mile away, and that they unloaded it there as a heavy ballast for flood protection; that often the empty cars were spotted on this passing track at Ovid; that this type of rock came from the mines around Webb City and that the pieces varied greatly in size. There appears some very confusing testimony from plaintiff concerning placing slag rock "there"; reading his testimony as a whole, we construe this as referring to the placing of the ballast in the "bottoms"; at one place he said distinctly that he did not know that this "slag rock was right there at this particular place"; and the other testimony is too vague to constitute a contradiction. Plaintiff did testify, however, that he had seen ties removed on the passing track, which work necessitated pulling the spikes, digging out some of the ballast, and pulling the ties; that, as he recalled, this had exposed some "slag boulders" on the outside or east side of the passing track, along the right of way; then, to a very leading question: "In the walkway?" the answer was "Yes, sir."

The scene of this accident was 48 miles from Pleasant Hill and actually far removed from any town or railroad yards. Plaintiff's contention was and is that he suffered a ruptured intervertebral disc, had not worked since, and that his injuries are permanent. It is not necessary to consider

either the extent of his injuries, his treatment, the medical testimony, or the evidence concerning plaintiff's earnings. Plaintiff testified, in substance, that in making this inspection his view was concentrated on the cars, but that he glanced down at the ground from time to time. The question of contributory negligence was clearly an element in the case, but that was submitted to the jury and it is not now for our consideration, this being a Federal Employers' Liability Act case. In passing, we may say that there might be some question as to whether or not the overhang of this car and the 30-inch extension of the car door from it, would have placed plaintiff's feet and body west of and out of the chat walkway when he was in a position to "shove." However, his testimony is to the contrary, and we do not consider that physical facts are sufficiently shown to enable us to reject his testimony. Several grounds of negligence were alleged in the petition, but the case was submitted to the jury solely on defendant's alleged negligence in causing, permitting and allowing "a loose boulder" to be and remain in the pathway, when defendant could reasonably have anticipated that someone might be injured thereby, and in thereby rendering plaintiff's place of work not reasonably safe.

We find it unnecessary to consider any of defendant's evidence, except in one or two particulars to be noted. In part, it concerned the nature, manner and regularity of inspections of the tracks and right of way, the construction of the tracks, the making of an inspection at the scene after the injury, and the absence of rocks or "boulders." At the close of plaintiff's evidence and again at the close of all the evidence, defendant offered its motions for a directed verdict; both were overruled. Defendant's present point on the sufficiency of the evidence was adequately preserved.

Passing to the merits of the controversy, we are confronted with two more or less preliminary questions, as follows: (a) did the evidence justify a reasonable inference or conclusion that defendant placed the rock there in constructing or repairing its track? And, (b), if it did not, then did defendant have notice, actual or constructive, of its presence? And finally, if an affirmative answer is given to either of those questions, then did the permitted presence of the rock there constitute negligence? The latter question has given us much more pause than the first two, and it is not extensively treated in defendant's brief.

As indicated above, we hold that plaintiff's testimony is not sufficient to show, specifically, that defendant placed the rock there, in the ballast, as a part of its construction project or by way of repairs. However, plaintiff's testimony, which for the purpose we must take as true, does show that he had seen similar rocks exposed on the east side of this particular passing track following the pulling and replacement of ties. We have concluded that from this evidence the jury might reasonably draw an inference that defendant had used and placed such rocks in or on that track as a part of the ballast; we are not impressed with the argument that they were only seen on the east side of the track, whereas the walkway was on the west side. It is true that there is no evidence that such rocks were exposed on the west side of the track in that particular work, but we think it is unnecessary to show directly the actual method or means of exposure, if there is a fair inference that such rocks were used in the ballast, generally. Considering the liberality of the existing federal rule declaring the right of the jury to draw inferences, which we shall later discuss, the permissible inference may be indulged that such rocks were placed in this track generally. We do not regard this as pure speculation as defendant suggests. It makes no particular difference whether the rock was placed, and left, in that particular position and location or whether it was used for under-ballast and later worked upward from the effect of normal wearing processes, so as to become

partially exposed. Ordinarily, if defendant placed the rock there, it would be unnecessary to prove notice, for the knowledge of the employees who put it there is the knowledge of the defendant itself. Howard v. Missouri Pacific R. R. Co., Mo., 295 S.W.2d 68; Tash v. St. Louis-San Francisco R. R. Co., 335 Mo. 1148, 76 S.W. 2d 690, 696; Lock v. Chicago, B. & Q. R. Co., Banc, 281 Mo. 532, 219 S.W. 919; Van Brock v. First National Bank in St. Louis, 349 Mo. 425, 161 S.W.2d 258. If this type of rock was used as under-ballast, and this particular one had later become exposed, then perhaps notice of that change in condition would be necessary. Such notice may, we think, be inferred from plaintiff's testimony which indicated that the rock was about half embedded in the chat of the walkway; the process of achieving that position would normally take considerable time, whether the chat was being worn away from around it, or whether it had been loose on top and was working down. There was also evidence that the chat in this walkway was generally firm, which is a rather definite indication that the surface had been undisturbed for a considerable period of time. And defendant's own evidence was that the chat had been placed on the passing track about 4 years previously, and that the last ties removed there were pulled in 1952, or about three years prior to the injury. In so far as that evidence aids the plaintiff, it may be considered. Of course, there is no case on these exact facts, but we think that the case of Brock v. Gulf, Mobile & Ohio R. R. Co., Mo., 270 S.W.2d 827, supports a holding that there was a submissible case here on the question of notice, if such was necessary. In that case the court said, in part, loc. cit. 831, 832: " * * * While the presumption of the continued existence of a proven fact does not run backward, yet surrounding circumstances may be such as to justify an inference that an established fact must have existed at a certain time in the immediate past. Missouri Power & Light Co. v. City of Bucklin, 349 Mo. 789, 163 S.W.2d 561, 564; Allen v. Chicago,

R. I. & P. R. Co., 227 Mo.App. 468, 54 S.W.2d 787, 793. The facts and circumstances shown concerning the hole, its location and appearance bespeak its prior existence for a considerable period." Defendant adduced evidence to show the frequency and nature of its inspections of the tracks and right of way. If notice be necessary, it was for the jury to say whether, in the course of these inspections, the rock should reasonably have been discovered and removed.

■ As this court has frequently stated, we must approach the question of the submissibility of a case under the Federal Employers' Liability Act in the light of the decisions of the Supreme Court of the United States. Howard v. Missouri Pacific R. R. Co., Mo., 295 S.W.2d 68, 71; Winters v. Terminal R. R. Ass'n, 363 Mo. 606, 252 S.W.2d 380, 383; Malone v. Gardner, 362 Mo. 569, 242 S.W.2d 516, 520. The trend of those decisions is so well stated in the case last cited, that we quote it here, as follows: " * * * In recent cases the Supreme Court of the United States has said the Act does not make the employer the insurer of the safety of his employees; and the basis of the employer's liability is his negligence, not the fact that injuries occur. But it is the clear Congressional intent that, to the maximum extent proper, factual questions in actions arising under the Act should be left to the jury; that such cases may not be taken from the jury merely because the question of liability is close or doubtful; that the jury has the right to make all reasonably possible inferences from such probative facts in the evidence as the jury chooses to accept; and that it is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from a jury on the theory that the court gives equal support to inconsistent and uncertain inferences. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610; Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Tennant v. Peoria & P. U.

Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Ellis v. Union Pac. R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572; Moore v. Chesapeake & O. R. Co. [340] U.S. [573], 71 S.Ct. 428 [95 L.Ed. 547]; Louisville & N. R. Co. v. Botts, 8 Cir., 173 F.2d 164; Tatum v. Gulf, M. & O. R. Co., supra [359 Mo. 709, 223 S.W.2d 418]." To these cited cases we may add the two most recent decisions of that court namely, Rogers v. Missouri Pacific R. R. Co., 352 U.S. 500, 77 S.Ct. 443, 459, 1 L.Ed.2d 493, and Webb v. Illinois Central R. R. Co., 352 U.S. 512, 77 S.Ct. 451, 459, 1 L.Ed.2d 503. The Webb case is so similar to the present case on its facts that we have deferred the completion of this opinion until it was decided. There a brakeman, while engaged in a switching operation, stumbled over a large, partly buried, clinker in a cinder walkway between two tracks. The Court of Appeals for the Seventh Circuit, at 228 F.2d 257, denied recovery, holding, among other things, that there was insufficient evidence that defendant had placed the clinker there, and that there was a total lack of evidence as to what would constitute reasonable prudence (or negligence) under the circumstances. That court, however, "assumed" that the clinker constituted a hazard. The Supreme Court reversed, holding that there was evidence as to the "procedures" followed [1] (even if plaintiff had the burden of showing such, which it expressly questioned), and other evidence, from which the jury might infer negligence of defendant, both in placing the clinker there and in the insufficiency of its inspections. This case sufficiently answers defendant's contention that plaintiff must fail because he did not show what condition of the roadbed would constitute an unsafe place to work. In the course of the opinion the court said, in part, quoting from the Rogers case, supra [77 S.Ct. 454]: " 'Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities.' " The authority of the Webb case here is somewhat restricted by the fact that the court stated that it was "conceded that the clinker in the roadbed created a hazardous condition * * *"; also, by the fact that the locus in quo there was apparently a part of the defendant's premises frequently used for switching operations.

■ We are primarily concerned here with determining whether the presence of the rock in question at the spot described was such a hazard that defendant, charged with knowledge of its presence, was required in the exercise of reasonable care, to remove it in order to furnish plaintiff a reasonably safe place to work. See,

1. "Petitioner testified without objection, based on his knowledge and experience gleaned from 27 years of railroading, that the railroad's custom and practice was to take precautions to prevent the presence of large clinkers in a railroad bed both because 'it doesn't give good footing; and it cannot be tamped in under the ties for support.' Moreover, the respondent's evidence supplied additional facts. The section foreman in charge of the repair work testified that he did not screen the ballast for large clinkers but merely visually inspected the ballast as it was shoveled by four laborers onto 'the pushcart' before being taken to the site. * * *"

generally, Reese v. Illinois Terminal R. R. Co., Mo., 273 S.W.2d 217, 221; Tiller v. Atlantic Coast Line R. R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610. If it was such, and if defendant's negligence played any part in the causation, "even the slightest," there was a submissible case. Webb v. Illinois Central, supra. The following cases, in addition to the Webb and Rogers cases, tend to support the conclusion here that the jury might reasonably draw an inference of negligence from this evidence: Brown v. Western Ry. of Ala., 338 U.S. 294, 70 S.Ct. 105, 94 L.Ed. 100; Brock v. Gulf, Mobile & Ohio R. R. Co., Mo., 270 S.W.2d 827; Southern Ry. Co. v. Puckett, 244 U.S. 571, 37 S.Ct. 703, 61 L.Ed. 1321; Holloway v. Missouri, K. & T. Ry. Co., 276 Mo. 490, 208 S.W. 27; Hatfield v. Thompson, Mo., 252 S.W.2d 534; Tash v. St. Louis-San Francisco Ry. Co., 335 Mo. 1148, 76 S.W.2d 690; Howard v. Missouri Pacific R. R. Co., Mo., 295 S.W.2d 68; Lock v. Chicago, B. & Q. R. R. Co., Banc, 281 Mo. 532, 219 S.W. 919; Reese v. Illinois Terminal R. R. Co., Mo., 273 S.W.2d 217; Fleming v. Husted, 8 Cir., 164 F.2d 65; Atlantic Coast Line R. R. Co. v. Gunter, 5 Cir., 229 F.2d 842; Marcades v. New Orleans Terminal Co., D.C.E.D.La., 111 F.Supp. 650; Chicago Great Western Ry. Co. v. Peeler, 8 Cir., 140 F.2d 865; Schilling v. Delaware & Hudson R. R. Corp., 2 Cir., 114 F.2d 69; Johnson v. St. Louis S. F. Ry., 164 Mo. App. 600, 147 S.W. 529. Some of these cases have been cited, and some have not. It is obviously impossible to discuss the facts in all those cases. They involved various and sundry alleged defects and hazards in connection with tracks, roadbeds, station platforms, switch stands, etc. In the Holloway case the plaintiff testified that there were large rocks in the ballast which rolled under his feet when he tried to climb on a moving train; however, this claim was combined with other alleged elements of negligence, such as defective ties and loose rails which caused a lurching of the cars; this perhaps, diminishes somewhat the effect of the decision here. In the Hatfield case, a hole in the ballast at the end of a tie was involved; in Brock, a hole filled with scalding water alongside a spur track or switch where trainmen might alight; in Tash, chunks of coal in a walkway between tracks and near a roundhouse; in Howard, a pin which rolled under plaintiff's foot on a repair dock; in Reese, ice around a switch stand; in Marcades, a partially embedded piece of brick or clinker in a walkway between tracks, in a yard area; in Puckett, clinkers in a pathway in the yards; in Gunter, chunks of loose rock on the ties where plaintiff alighted from a car in switching operations; in Peeler, the end of a protruding plank at or near a crossing where switchmen walked, and which apparently should have been beveled or covered. In the Rogers case, supra, [352 U.S. 500, 77 S.Ct. 447] one ground of negligence alleged was the maintenance of a surface "covered with loose and sloping gravel which did not provide adequate or sufficient footing * * *." This gives a general idea of the nature of those cases. In all of them the evidence was held sufficient for submission. It is true that in substantially all of those cases (except Rogers and Holloway) the hazard was located at a place which was apparently used by more people, or more often, than was the situs in the present case. We confess that this has caused us some hesitation. See, for instance, the suggestions on that subject in Baker v. Lusk, 199 Mo.App. 44, 201 S.W. 357. But much water has gone over the dam since that opinion was written, particularly in cases of the present type. It is conceded in defendant's brief that the rules required plaintiff to walk along this passing track and inspect the train whenever one on which he was employed stopped there; this certainly made the location a "place of work." We have concluded that the difference referred to is one merely of degree, though naturally it would enter into and affect defendant as a practical matter in its consideration and anticipation of the extent of any danger involved. In considering the reasonable-

ness of defendant's conduct, it need not be shown that it should have contemplated the precise thing which did occur; the chances of this particular occurrence would seem slight. It is sufficient to fix liability, however, if defendant should have reasonably anticipated the likelihood of some injury to an employee. Dickerson v. St. Louis Public Service Co., Banc, 286 S.W.2d 820. And we note here that plaintiff considers as highly material the fact that this round stone was more or less concealed by being partially buried in the chat.

 Defendant's counsel have cited the case of Pennsylvania R. R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed 819, holding that where two inconsistent inferences might equally well be drawn as to whether a collision of cars occurred, neither was established and plaintiff must fail. Counsel also cite Patton v. Texas & Pac. Ry. Co., 179 U.S. 658, 21 S.Ct. 275, 45 L.Ed. 361, to the same general effect. Anyone who reads, even casually, the opinion in the case of Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, the opinions in the Webb and Rogers cases, supra, and the federal rule already quoted from Malone v. Gardner, 362 Mo. 569, 242 S.W.2d 516, will thereby discern that such doctrine is not presently being applied by the Supreme Court in cases under the act in question. As illustrating the liberality of the rule permitting a jury in these cases to draw inferences from the evidence, even to the point of frankly permitting it to speculate in some measure, see particularly Lavender v. Kurn, supra; and see also, generally: Tennant v. Peoria & Pekin Union Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Fleming v. Husted, 8 Cir., 164 F.2d 65; Winters v. Terminal R. R. Ass'n of St. Louis, 363 Mo. 606, 252 S.W.2d 380, 385; Howard v. Missouri Pacific R. R. Co., Mo., 295 S.W.2d 68. And in Winters v. Terminal R. R. Ass'n, supra, the court said that if fair-minded men might draw different inferences from

the evidence, "even though thereafter 'a measure of speculation * * * is required * * *'" the case is submissible. And, also, (Winters, supra) it is said that only when there is a complete absence of probative facts to support the conclusion, does reversible error appear. Were this case one governed solely by our own decisions we would have a different problem. We feel that we are constrained by the latest decisions of the United States Supreme Court to hold that the jury here might "with reason" draw an inference or a conclusion of negligence, and that we may not reverse the judgment for insufficiency of the evidence.

The judgment will be affirmed. It is so ordered.

All concur.