DEL H. DAVIS v. THE BUCK'S STOVE AND RANGE COMPANY, a Corporation, Appellant.—49 S. W. (2d) 47.

Division One, April 2, 1932.

1178

*Harold F. Hecker, Lyon Anderson* and *Leahy, Saunders & Walter* for appellant.

*Foristel, Mudd, Blair & Habenicht* for respondent.

1180

STURGIS, C.—This suit is for personal injuries brought against the St. Louis Merchants Bridge Terminal Railway Company, herein called the Terminal Railway, and The Buck's Stove and Range Company, a manufacturing corporation of St. Louis. On the trial to the jury judgment went for the Terminal Railway Company by direction of the court on demurrer to the evidence, and against the Stove and Range Company, which appeals the case here and will be referred to as the defendant or appellant.

At the time of plaintiff's injuries the defendant was operating a large plant in St. Louis. By a mutual business arrangement the Terminal Railway had constructed and was operating a switch track into and through the defendant's yards for the purpose of hauling freight in and out. This switch track was on defendant's premises but was maintained and kept in condition by the Railway Company, and the engines and cars and the crew operating the same were furnished by the Railway Company. The plaintiff was a fireman in the employ of the Railway Company on an engine which came into defendant's plant on this switch track to move cars of freight in or out. The defendant from time to time communicated with the Railway Company's manager at its office as to the switching work it wanted done. This switch track extended in a general east and west direction, with the buildings of defendant's plant on either side. The buildings on the south side of the switch track, the fireman's side of the cab when going west, were located near the switch track, some 54 inches from the south rail. The projection or overhang of the engine cab was some 30 inches, leaving 24 inches in the clear. The engine in question, with plaintiff as fireman, was going west and plaintiff's evidence is that the buildings were so close to his side of the cab that it was dangerous to put his head out the side window to look forward for a clear track. Plaintiff's injury was caused by his being struck with what is called a "crane," erected, used and maintained by defendant, attached to and alongside of a building

on the south side of the switch track with its arm or jib, when in use, extending over the rails of the switch track and being some eight or nine feet high. This arm or jib of the crane worked on a pivot and when in use swung around over the switch track, and when at rest and not in use was fastened alongside of the building parallel with the south rail. This crane was used by defendant to convey material from its building on the south of the track to its building on the north side, or *vice versa,* and as an engine would not pass under it, when it was not in actual use it was supposed to be securely fastened by a safety catch to prevent its swinging out and over the switch track. There was evidence that when not fastened it was naturally inclined to do this.

On the occasion of this injury the engine of which plaintiff was fireman, and riding on the south side next to the crane, came into the yards over this switch, about eight o'clock in the evening, travelling at some five or six miles per hour, and suddenly ran into the arm of the crane which crashed into and penetrated the engine cab, striking the plaintiff and breaking his leg and inflicting other injuries.

In his petition plaintiff alleges, in substance and in legal vernacular, that said device or crane was so constructed as to have an arm or jib which would and could be caused to move, protrude and swing out, near to or over said switch or railway track and in the path of locomotive engines and cars passing along and over said track at said point; that about the 2nd day of September, 1926, he was in the employ of defendant Railway Company as a locomotive fireman on a locomotive engine then being used by the said defendant Railway in handling and switching railway cars on said switch track as aforesaid, when said locomotive engine was then and there caused, suffered and permitted to run against and come into violent contact and collision with said arm or jib of said crane, which was then and there negligently and carelessly caused, suffered and permitted by the defendants, in the nighttime, to be unfastened, projecting and protruding out, near and over said railway track and in the path of said locomotive engine, whereby plaintiff was seriously and permanently injured, as a direct and proximate result of the negligence and carelessness of the defendants, in the following respects:

1. That defendants negligently and carelessly placed, erected and maintained said crane in such close proximity to said railway track as to permit the said arm or jib of the crane to move, protrude and swing out, near to and over said track and in the path of locomotives and cars passing along and over the same, and without fastening or securing said arm or jib of said crane in any manner whatsoever, so as to prevent same from moving, swinging or protruding out, near to and over said switch or railway track and in the path of said locomotive engine and cars, as aforesaid, when the defendants'

knew, or in the exercise of ordinary care would have known, that unless said arm or jib of said crane was fastened or secured in some manner it was likely to move, swing and protrude out, near to and over said switch track and in the path of the said locomotive engine and cars, and thereby cause same to come in violent collision with said arm or jib of said crane, and thus and thereby injure persons working on said locomotive engine.

There are other allegations of negligence but same were abandoned at the trial and plaintiff, by his instructions, went to the jury on the allegations of negligence which we have quoted. The defendant's answer was a general denial plus a plea of contributory negligence, abandoned here. The jury returned a verdict for the Railway Company at the court's direction and, under the instructions given, against The Buck's Stove and Range Company for $35,000, which, on motion for new trial, was reduced to $20,000 on *remittitur* by reason of the trial court holding that such verdict was excessive. Such defendant appeals.

We are first confronted with defendant's assignment of error that the court refused to sustain the demurrer to the evidence and direct a verdict for defendant. The argument is that plaintiff alleged and recovered judgment on a specific act of negligence in that defendant negligently placed and maintained this crane so close to the railroad track as to permit the arm of same to swing out over the track, without fastening or securing the same so as to prevent its so doing, when defendant knew or should have known of this danger; and that the evidence wholly fails to sustain this charge. We think that the mere erection of the crane near to the track can hardly be regarded as a negligent act and the evidence does not so show. It would likely not have been practical to place the crane so far from the track that the arm, when swung around in use, would not have extended over the track and constituted a dangerous obstruction. It doubtless could and should have been securely fastened in a position alongside of the track to prevent this action when not in use. The negligence, therefore, consisted in not keeping the arm of the crane safely and securely fastened parallel with the switch track so as to prevent its swinging or protruding over the track in the path of a moving engine or cars; and this was the negligence which the instructions submitted to the jury.

We think the evidence, though largely circumstantial and inferential, was sufficient to take this question of negligence to the jury. It stands uncontradicted that defendant had exclusive use and control of this crane. Its employees unfastened the crane and placed it across the track when in use to convey material from one side of the track to the other, and when not in such use were required to fasten it alongside the buildings and parallel with the rails of the

track. On the day of the accident this crane was in use and across the track till about four o'clock in the afternoon. Defendant's evidence is that it was then swung back from the track and fastened in position with a "safety catch" as it always had been, and which was secure. On account of the height of the arm or beam which swung around on a pivot at one end, this catch had to be manipulated with a short stick or piece of board which the operator used to place it in position to hold the arm rigid. We do not know that we understand fully the workings of this mechanism, but, as we understand it, if the operator failed to adjust and fit the safety catch to the beam or arm, it would remain unfastened and would naturally, or when aided by the wind, swing out and over the south rail in an angling position pointing toward the incoming train. There is abundant evidence that it was in such position when the engine struck it and it crashed end on into the cab. The defendant's employees testified that the arm of the crane was placed and fastened in proper position by the operator when they ceased to use it at about four o'clock in the afternoon and that it remained in such position and fastened until a short time before the accident, but this evidence was not conclusive and was not believed by the jury. It is true that no one saw the arm of the crane loose or projecting over the track after its use ending at four o'clock till the time of this accident, but the evidence is quite convincing that it was in fact loose from its fastening and projecting over the track immediately before the accident. In fact, defendant's plea of contributory negligence is based on the proposition that plaintiff was negligent in not seeing or discovering "the arm of the crane before and in the path of the engine in which he was riding in time to have moved out of the position in which he was struck and could thereby have avoided being injured." Defendant says that the cause of the accident, that is, the cause of the arm of the crane being in a position to be caught by the engine cab, is shrouded in mystery, but insists that the burden of removing this mystery and pointing out defendant's negligence is on the plaintiff. This is a good general proposition of law and defendant's cited cases so hold.

Along this same line, defendant insists on applying to the facts of this case the recognized rule that if there are two or more *equally* probable causes of an accident, for one of which defendant is liable, but is not liable for the other, the plaintiff cannot recover.

It is then suggested that as it had been raining the evening of the accident and the track made soft, the swaying of the engine might have caused it to catch this arm of the crane without its being loose from its proper fastening, but the evidence contradicts this possibility. It was also suggested that while engines had been passing and

repassing this crane for years and nothing of this kind had ever happened before, yet on this occasion the engine then being used might have been sufficiently large that the overhang of the same caused it to catch the arm of the crane, though fastened in its proper position, but there is no evidence for and much against such possibility. Certainly the evidence warrants, if it does not compel, a finding that the arm of the crane was not fastened and had swung out from the buildings and was protruding over the south rail of the track at an angle toward the coming engine. Also it is suggested that even if the arm of the crane was not fastened and was protruding over the south rail of the track, there is no evidence that defendant or its employees is responsible for this condition. It is suggested that the unfastened condition of the arm of the crane was caused by mischievous boys or by trespassers. This, however, is the barest speculation and defendant's employees, who would most likely know about this, said that they saw or heard of no such trespassers.

This case, we think, is much like Crawford v. Stock Yards Co., 215 Mo. 394, where plaintiff, while riding in defendant's yards on the side ladder of a freight car in care of his stock, was struck and injured by an open gate which swung out and protruded over a walkway or platform extending alongside of and parallel with the moving train. This gate was so constructed that when closed it closed a pen for stock on the other side of this walkway, and when opened it extended across to within a few inches of the train and closed this walkway, and with another similar gate formed a shute or closed passageway from the door of a stock car to the cattle pen across the walkway. When unloading a stock car it was stopped opposite the pen into which the stock was to be unloaded and then and only then were these gates supposed to be opened and swung across the walkway alongside of the train. On this occasion a gate was left open where no stock was to be unloaded or this car stopped. As a consequence, this open gate extending across the walkway alongside the moving train struck plaintiff and injured him. The evidence showed that plaintiff had a right to expect a clear walkway along the side of the car on the side ladder of which he was riding. No one could or did explain how or why this gate was left open where no cattle were to be unloaded, and no one knew who opened it. As to this the court said: "There is nothing in the evidence to indicate that plaintiff had any reason to anticipate that these gates might be open. It was contrary to the usual course of operation, in those stock yards; nothing of the kind is shown to have ever occurred before, and it could occur only through the negligence of defendant, there being no suggestion that in this instance it did occur because of the unauthorized intermeddling of some third per-

son." And in answer to a criticism of plaintiff's instruction authorizing a finding for plaintiff if the jury found, with other things, that "said gate had been negligently left open by defendant's employees," that there was no evidence tending to show that it was defendant's employees who left the gate open, the court said: "There was no express evidence as to who left the gate open. But if the gate was open as and when the plaintiff says it was, was it an unwarranted inference that it was left open by defendant or some of his employees? If the gate was open and plaintiff was hurt by it, did it devolve on him to prove who opened it? If so, then, in a case like this, there would be no remedy for the injury. The gate was in the keeping of the defendant and if it was left in a negligent manner and no testimony showing who did it, the inference would naturally be that the keeper did it. There was no error in that instruction."

The above language was quoted with approval in the case of Kennedy v. Phillips, 319 Mo. 573, 588, where the plaintiff was injured by falling into an open elevator shaft where the gate to the elevator had been left open. No one knew why this elevator gate had been left open or who did so. The court there held that if the elevator was used only by defendant and his employees and there is no evidence showing who left the gate open and unguarded, the inference is that it was left open by defendant or his employees, and that plaintiff cannot be denied recovery because of a failure to prove a fact within the superior knowledge of the defendant.

This point, therefore, is ruled against defendant.

Defendant insists that plaintiff's Instruction 2, covering the entire case and authorizing a verdict for plaintiff on a finding of the facts and conditions thereby hypothesized, is erroneous. This instruction is lengthy and need not be copied in full. It first tells the jury that if by mutual agreement the railroad switch was built into and through defendant's yards for the purpose of handling freight, and that the Terminal Railroad was given the right to and was expected to operate its engines and haul cars over this switch track in doing such work, the defendant owed it the duty to "exercise ordinary care to so manage and maintain its structures near to said switch track as to avoid injury to the railroad employees while performing their work." This is good law and is not criticised. The instruction then tells the jury that if they find that defendant, for its own use, erected and maintained this crane so near to the switch track that the arm of the same working on a pivot would swing out and protrude over the switch track in the path of the engine and cars unless such arm of the crane was in some manner fastened and secured to prevent this; and further find "that defendant negligently suffered and permitted said jib or arm of said crane to be and remain unfastened and not secured in such position as to allow

engines and cars to safely pass over said track without coming into contact with said jib or arm," and further knew or should have known the danger of its so doing; and if you further find that about September 2, 1926, while the plaintiff was fireman on an engine being operated in defendant's yards on said switch and near said crane, "the said jib or crane, because of its location and the manner of its construction" and "because not sufficiently fastened, had moved and swung out and was protruding over said switch track and did come into violent contact with said locomotive engine," and did thus injure the plaintiff; "and if you further find that defendant was negligent in so maintaining the crane and the said jib or arm thereof and in suffering and permitting the crane to be and remain unfastened and unsecured as aforesaid, and that as a direct result of such negligence, if it was so negligent," the plaintiff sustained injury, then your verdict will be for plaintiff.

It is claimed that this instruction is erroneous because it fails to include as a necessary element of liability defendant's knowledge of the defective condition of the crane. In some cases knowledge of the defective or dangerous condition of the offending instrumentality is necessary .in order to attach liability therefor, and in some instances at least such knowledge must exist for such length of time as will permit a correction of the defect. This condition precedent to liability arises only when the dangerous condition arises unexpectedly or from extraneous causes and does not apply when the dangerous or defective condition is created by or is the natural result of the act of defendant itself, through its agents or servants. The defendant was presumed to know the natural results of his own act. If one commits a negligent or wrongful act, he becomes at once responsible for the natural and likely results thereof.. In this case it is charged that the defendant, acting through its agents and servants operating its manufacturing plant, was negligent in not securely fastening the arm or jib of the crane, the natural and likely result of which was that it swung over the track in the path of the engine, causing plaintiff's injuries as fireman thereon. If, as defendant suggests, it had been shown that some trespasser had, without defendant's knowledge, unfastened this arm of the crane, or that same had been caused by an act of God or the elements, and defendant's negligence was in not discovering and correcting the danger thus created, the rule of law invoked by defendant would apply, but not so here. [Bodenmueller v. Columbia Box Co., 237 S. W. 879, 881; Stegemann v. Heil Packing Co., 2 S. W. (2d) 169; Midway Natl. Bank & Trust Co. v. Davis, 288 Mo. 563, 579; Morton v. Lloyd Const. Co., 280 Mo. 360, 380.]

In the Bodenmueller case, supra, the court said: "Therefore, if the operator in lifting the trapdoor and going down through the opening to adjust the belt, was doing what the master had made it

his duty to do, then his act in doing so was the act of the master, and knowledge would be imputed to the master however short the time, because it is the nondelegable duty of the master to not only exercise ordinary care to furnish a reasonably safe place for the servant to work, but he must exercise ordinary care to keep the place reasonably safe. The duty of the master in this regard is a continuing one. . . . This is not like a case where the unsafe condition was brought about through no act or agency of the master, and of which he had no knowledge, or where sufficient time had not elapsed for knowledge to be imputed to him."

It is difficult to understand just what defendant means in urging that this Instruction No. 2 submits to the jury a question of law in permitting a recovery if defendant "negligently suffered and permitted the jib or arm of the crane to be and remain unfastened, etc." It is suggested that "the jury's idea of the defendant's duty was an absolute duty and not one limited to ordinary care or arising only after actual or constructive knowledge of the dangerous condition of the premises. It might be that the jury, and it would be justified in its view under this instruction, found that negligence in such a case as this was failure to exercise the highest degree of care, or that the defendant was an insurer of the safety of invitees." If this means that the word "negligently" should have been defined to mean want of ordinary care instead of being an insurer or required to use the highest degree of care, then an examination of this instruction shows that the jury was told that "it was the duty of defendant to exercise ordinary care to so manage and control the structures near the said track as to avoid injury" to the trainmen. Besides this, defendant's given Instruction 6 told the jury that defendant was not an insurer of the safety of plaintiff in operating this engine on this switch track and was not liable solely because he sustained injuries while on defendant's premises, but that defendant's duty was only to exercise such care as an ordinarily prudent person would exercise under the circumstances to maintain the crane mentioned in a reasonably safe condition and position so as not to come in contact with engines and cars on such track and not to injure persons operating same; and that if defendant "did exercise ordinary care, that is, such care as a reasonably prudent and careful person would have exercised in defendant's situation, etc.," to find for defendant. It is not necessary to say that the instructions must be read together as a whole.

If defendant means by this criticism that the jury might have understood that defendant's duty to exercise ordinary care arose only in case of defendant's actual knowledge of the dangerous conditions of this crane being brought home to it otherwise than by and through its workmen guilty of the negligence, then what we have said disposes of that point.

The further criticism of this instruction that it assumes a fact not in evidence is fully and necessarily disposed of in what we have said in disposing of the demurrer to the evidence and as to the necessity of defendant having actual knowledge of the defect. We hold that defendant had constructive knowledge of the defect under the finding of the jury that defendant's agents and servants failed to fasten and permitted the arm of the crane to be loose and project over the switch track.

Further criticism is made of this instruction that it broadens the scope of the petition and submits a charge beyond its scope. The argument is that the gist of the charge in the petition is that ''defendant negligently suffered said crane to be and remain unfastened'' when it knew what would likely happen and the danger to the trainmen. ''The charge in the petition was negligent failure of defendant or its agents to fasten the crane.'' This, we think, is a correct interpretation of the petition, but we do not agree that the instruction in question is reasonably susceptible of the construction that it authorizes a recovery by plaintiff ''even though they might believe that the crane became unfastened by the act of a trespasser, mischievous boys, or by the action of the wind.'' These were defenses contended for by defendant, though with little or no evidence to sustain same, and certainly the jury did not find for plaintiff on the strength of these defenses. Besides this, defendant's fifth instruction told the jury that ''even though you find that the plaintiff suffered the injuries on the occasion under inquiry, nevertheless plaintiff is not entitled to recover unless he has proven by a preponderance or greater weight of the testimony that his injuries were occasioned by the failure of the defendant in maintaining the arm or crane mentioned in the evidence without fastening or securing the same in any manner whatever to prevent its moving, swinging or protruding over and across the switch track mentioned, and in permitting the said crane arm to be loose and unfastened; but if you believe that the plaintiff's injuries resulted from any other cause than the failure of the defendant to have said crane arm so fastened or secured at the time mentioned in the evidence, or if, under the evidence, you are unable to ascertain whether plaintiff's injuries were caused in whole or in part through the failure of said defendant to maintain said crane arm without fastening or securing the same, or solely by some other influence, then your verdict must be for defendant.''

One other matter deserves attention. The petition assigns some five or six grounds of negligence. The plaintiff only asked instructions as to one and, so far as the instructions are concerned, the case went to the jury on one ground of negligence only. By its Instruction D the defendant set out the substance of another ground of negligence charged in the petition as to defendant's negligence in order-

ing this engine to come in on this switch track without inspecting or ascertaining the condition of the crane, and asked the court to instruct the jury that plaintiff could not recover on that ground of negligence. There was some evidence before the jury mentioning this matter, though insufficient to take it to the jury as a ground of negligence. We are not informed by the record that the petition was read to the jury or that this ground of negligence was mentioned in the opening statement or in the course of the trial, though this is likely. The court refused this instruction and this is assigned as error. Several times this court has held that where a pleaded ground of negligence is shown to have been abandoned by plaintiff by his making no mention of such negligence and asking no recovery thereon, it is not error to refuse an instruction formally and specifically withdrawing such ground of negligence from the consideration of the jury. [Johnson v. Railroad, 259 Mo. 534, 550; Dietzman v. Screw Co., 300 Mo. 196, 215; Gehbauer v. Bakery Co., 285 S. W. 170, 174.] The ground for so ruling is that the error, if any, is harmless and that the jury must have understood that the grounds of negligence not specifically mentioned in the instructions have been abandoned.

The only other matter for consideration is that although the trial court caused the verdict of $35,000 to be reduced to $20,000, defendant insists that it is yet excessive and should be reduced by requiring a further *remittitur*. We have carefully read the evidence as to plaintiff's injuries. At the time of his injury he was thirty-five years of age, sound and in good health, and earning about $150 per month at his vocation of locomotive fireman. He suffered a fracture of the leg between the knee and hip joint, aggravated by the leg being bruised and a severe flesh wound over the fracture, which, when healed, left a distinct scar. He underwent the usual and necessary treatment at the hospital with what the doctors said was good results. Owing to the flesh wound, the leg was difficult to set and resulted in the bones at the fracture overlapping and the leg being somewhat crooked. Whether necessary or even beneficial or not, the plaintiff some months later had another operation performed by another doctor, rebreaking the fracture, taking out a short section of the bone and resetting it in better alignment. It then healed but left the left leg shorter than the other and in walking plaintiff's foot has a tendency to turn inward. The knee was left somewhat stiff. At the time of the trial plaintiff had not worked any, walked with a cane, and is incapacitated from following his vocation of fireman or any work requiring much use of this leg. He has, of course, suffered considerable pain and claims that he suffers pain yet in his hip and back, owing largely to his leg being shortened. It is quite certain, however, that he is in much better condition physically than if the injury had

necessitated an amputation of the leg. If we are to be guided by the principles and precedents of such cases as Kleinlein v. Foskin, 321 Mo. 887, 13 S. W. (2d) 648; Powell v. Kansas City Rys. Co., 226 S. W. 916; Morris v. Atlas Portland Cement Co., 19 S. W. (2d) 865, 878; Brucker v. Gambaro, 9 S. W. (2d) 918; Kibble v. Q., O. & K. C. R. Co., 285 Mo. 603; Miller v. Schaff, 228 S. W. l. c. 491; and Fitzsimmons v. Railroad, 294 Mo. 551, and allowing for the earnings already lost by plaintiff and his rather heavy medical and hospital expenses and his probable continued suffering, we are constrained to hold that $15,000, as of the date of the original judgment, is all that should be allowed, unless plaintiff prefers a new trial.

If, therefore, plaintiff will, within ten days, file a *remittitur* of $5,000 as of the original judgment date and consent that a judgment for $15,000 be entered as of that date, the case will be affirmed and judgment be so entered; otherwise, the case will be reversed and remanded. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.