**Noah HOWARD, Appellant,**

**v.**

**MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Respondent.**

**No. 45071.**

Supreme Court of Missouri.

Division No. 1.

Nov. 12, 1956.

Hubbell & Mattes, St. Louis, and Walter A. Raymond, Kansas City, for appellant.

Harold L. Harvey, Marvin Boisseau, Jr., D. B. Sommers, St. Louis, for respondent.

VAN OSDOL, Commissioner.

This is an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et

seq., for injuries sustained April 21, 1952, when plaintiff fell while engaged in repairing a freight or tank car in defendant's repair yard at Paragould, Arkansas. Plaintiff's claim was stated, and his case was submitted on negligence of defendant in failing to provide a reasonably safe place to work. The jury returned a verdict for plaintiff in the sum of $34,040. Defendant moved to set aside the verdict and judgment for plaintiff, and for judgment for defendant in accordance with defendant's motion for a directed verdict or in the alternative for a new trial. The trial court refused to enter judgment for defendant, but granted a new trial specifying as the ground therefor that the evidence "fails to establish notice, actual or constructive, chargeable to the defendant, of any foreign object, substance, obstacle, or other element which created a dangerous condition or unsafe place in which to work, or which caused or contributed to cause plaintiff's injuries." Plaintiff has appealed.

Plaintiff had alleged that he was required to work as a car man on a concrete runway adjacent to defendant's repair tracks, and that while in the performance of such work he fell over a piece of debris and was injured. Specifically, plaintiff had alleged that defendant "negligently failed to furnish and provide plaintiff with a reasonably safe place in which to work in that defendant negligently through its employees other than plaintiff, caused and permitted the piece of debris to be and remain on the concrete runway, although defendant knew or in the exercise of ordinary care should have known that employees, including plaintiff, in walking upon said runway would likely be in danger of falling thereover and being injured thereby, and that by reason thereof the same was not a reasonably safe place in which to work."

Herein upon appeal, plaintiff-appellant contends there was substantial evidence tending to show that some employee of defendant placed a bolt or pin on the con-

crete runway and permitted it to remain there; that such act of such employee was the act of defendant itself; and that the employee's knowledge was likewise defendant's knowledge. On the other hand, defendant-respondent contends plaintiff was not prejudiced by the order granting a new trial for the reason that plaintiff failed to make out a submissible case of negligence of defendant as alleged. Defendant-respondent asserts the evidence failed to show the identity of any object which caused plaintiff to fall; or that it was an object used by the defendant in its business; or that it was placed in the area where plaintiff was working by any employee of defendant; or that defendant had knowledge, actual or constructive, of any dangerous condition causing plaintiff's injury. Defendant-respondent also contends that the trial court did not err in granting a new trial for the additional reasons that plaintiff's principal verdict-directing Instruction No. 1 was erroneous; and that error was committed in sending the jury to the jury room with two forms of verdict for plaintiff and none for defendant.

In defendant's Paragould repair yard, two repair tracks lie in a general north-south direction. A segment of these two parallel tracks is sheltered by a "repair shed." A concrete pavement nine feet wide lies between the two tracks, and there are spaces three and one-half feet wide between the edges of the pavement and the tracks on either side. These spaces are filled and surfaced with ballast consisting of cinders and chat. The concrete runway is used for men to walk on, and as traction for tractors hauling car wheels and heavy car parts to and from the repair tracks.

There was evidence introduced tending to show that at approximately ten-thirty in the morning of April 21st, plaintiff and his helper Braden, having completed the repair of a freight car on the east track near the north end of the repair shed, were instructed to go to the southerly end of

the repair shed and examine the bearings on the south end of a tank car set on the west repair tracks, and install a pair of wheels under the north end of the car. Plaintiff and Braden, having examined the bearings, were proceeding to remove the "chocks" so the car could be moved farther southwardly to a position where wheels could be installed under the north end. Plaintiff, who had been at the southwest corner of the car, walked eastwardly across the west track near the south end of the car and stepped up on the concrete runway. Only plaintiff and Braden were working on the car, although one Fields, a car inspector, was testing the air brakes and was standing east of and near the south end of the car.

Plaintiff testified as follows, "Well, I walked across the tracks and stepped up on the concrete, and Mr. Fields was standing there at the corner of the car, and I had to walk or circle around him, * * *." Plaintiff stepped on some object with the ball of his foot. "I felt something felt like bolt or pin, and it slipped, and I heard the clink, clink of metal on the concrete." He experienced "rolling" under the ball of his foot. Plaintiff thus identified the object as a bolt or pin. It "had to kick toward the track." Plaintiff fell on his left knee and left side and was seriously injured. Plaintiff had not seen the object on which he stepped, and had no idea how long it had been there.

Car men use bolts and pins in repairing cars. The bolts and pins are one-half or five-eighths of an inch in diameter and about six inches in length. When bolts or pins are not in immediate use they are placed on the cinder-chat ballast between the concrete runway and the rails of the tracks in order to keep the concrete runway clear to walk on and the tractors to run on. Laborers clean up the riptrack at every opportunity, "especially where this concrete area is that the traffic goes up and down to haul wheels for the men." There wasn't any custom or practice of allowing an accumulation of tools or equipment on the concrete. Defendant's orders were to keep tools and supplies off of this concrete runway. Everyone kept "his tools or any supplies off of the concrete runway." When car men in repairing cars remove scrap and "have it in their hand they are to put it in the (scrap) barrel"; but if they lay it down, "it is the practice that the laborer then handles it." There was evidence that from twelve to twenty car men and laborers worked on the repair tracks at Paragould the morning plaintiff was injured. No one was permitted in the car repair shed other than defendant's employees. It was not plaintiff's duty to pick up materials and debris dropped on the concrete. Plaintiff had not put any metal pin or bolt in the area. He had had none in his possession that day.

A witness for defendant testified that car men in making repairs are constantly walking up and down the concrete runway with tools and car parts and bolts and pins. This witness had the duty of seeing that the concrete area was kept clean. The witness could not say whether the car men were carrying bolts and pins the morning plaintiff was injured. He was not present at the time plaintiff fell, as he had been "off the premises" for twenty to twenty-five minutes. He "got back" ten or fifteen minutes "after the casualty."

The question of the submissibility of a plaintiff's case in an action under the Federal Employers' Liability Act is to be approached in the light of the decisions of the Supreme Court of the United States. The Supreme Court of the United States has said the Act does not make the employer the insurer of the safety of his employees; and the basis of the employer's liability is his negligence, not the fact that injuries occur. And in this connection, it is the clear Congressional intent that, to the maximum extent proper, factual questions in actions arising under the Act should be left to the jury; that such cases may not be taken from the jury merely be-

cause the question of liability is close or doubtful; that the jury has the right to make all reasonably possible inferences from such probative facts in the evidence as the jury chooses to accept; and that it is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from a jury on the theory that the court gives equal support to inconsistent and uncertain inferences. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610; Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 81 L.Ed. 1444; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Ellis v. Union Pac. R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572; Moore v. Chesapeake & O. R. Co., 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547.

Considered from a standpoint most favorable to plaintiff, the evidence which we have stated supra is substantial in tending to show that some employee of defendant, a car man or laborer working along the concrete runway or platform, had dropped or laid a pin or bolt or like object on the concrete surface of the runway upon which plaintiff slipped and fell. There was evidence that employees of defendant were constantly walking over the runway with tools, car parts, and bolts and pins. Defendant's employee, who had the duty of seeing that the concrete runway was kept clean, was off the premises. As stated, there was testimony that only employees of defendant were permitted in the repair shed. Plaintiff testified he had not placed the bolt or pin on the concrete runway. In fact, plaintiff testified he had had no occasion to use a bolt or pin during the morning before he was injured. The evidence, which was substantial in tending to exclude the possibilities that plaintiff and others (than defendant's employees) could or did place the object on the runway, afforded a basis for the reasonable inference that some employee of defendant other than plaintiff put the object there. This,

even though one might speculate on the possibility that the object had fallen from the car being repaired or from the roof of the repair shed.

It is true that no witness testified of having seen a bolt or pin. It is the position of defendant-respondent that the facts that plaintiff could not testify of having seen and visually identified the object over which he fell and that no other witness saw or discovered the bolt or pin when or after plaintiff fell are fatal to plaintiff's case. Plaintiff explained that the object had to "kick toward the track." And we believe we should not go so far as to say as a matter of law that plaintiff's identification of the round object over which he fell as being a bolt or pin, such as used in repairing cars, by the exercise of his sense of touch in feeling the object roll under his foot and by hearing the metallic "clink" of metal on concrete was insufficient and unsubstantial in tending to show the object over which he fell was a bolt or pin.

Plaintiff was not able to show how long the bolt or pin had been there, but, upon the question of the submissibility of plaintiff's case, the time the object had been on the runway was unimportant, inasmuch as the evidence was substantial in tending to show and it was submitted that the object was caused and permitted to be on the runway by defendant through the act of some employee other than plaintiff.

In support of its contention that plaintiff failed to make out a submissible case, defendant-respondent has cited Thompson v. Thompson, 362 Mo. 73, 240 S.W.2d 137, which is distinguishable from the instant case on the facts—in that case, all of the evidence negatived any possible inference that the oil got on the apron of defendant's engine through the agency of any employee, and there was no factual basis for the inference as to how long the oil had been there; Finnegan v. Monongahela Connecting R. Co., 379 Pa. 63, 108 A.2d 321, wherein the pile of steel which had been placed beyond the yellow line (indicat-

ing the space which was to be left clear for the use of railroad employees, including plaintiff) was not put there by defendant's employees; on the contrary, the undisputed testimony was that the steel had been there placed by the employees of a shipper, and there was no evidence that defendant had any notice of the manner in which the shipper had piled steel in the area from which defendant could reasonably have anticipated that obstructions would have been in the area; and Texas & N. O. R. Co. v. Pool, Tex.Civ.App., 263 S.W.2d 582, in which there was no evidence that the grease on the tie where plaintiff fell had been dropped on the tie by employees of defendant and no evidence that defendant knew the grease was on the tie or that it had remained on the tie for such a period of time that defendant, in the exercise of ordinary care, should have discovered and removed it. Defendant-respondent has cited numerous other cases, all of which are to be differentiated from the case at bar on their facts. Space does not allow an analysis of more of them here.

■ Plaintiff's principal verdict-directing Instruction No. 1 did not submit defendant's actual or constructive notice or knowledge of the presence of the bolt or pin on the runway. Such notice or knowledge, actual or constructive, is a prerequisite of defendant's liability. Hatfield v. Thompson, Mo.Sup., 252 S.W.2d 534; Thompson v. Thompson, supra, 362 Mo. 73, 240 S.W.2d 137, and cases therein cited. Defendant-respondent reminds us that the record is silent as to how long the "object was there. There is no showing that defendant had an opportunity to remove it, or to warn plaintiff of its existence. For all that is shown, it could have been there but an instant before plaintiff stepped on it." It is contended that plaintiff's case must fail because, it is said, plaintiff did not prove defendant's knowledge, and that the instruction was erroneous because it was without factual support and necessarily omitted an essential factual element.

In discussing these contentions we bear in mind the theory of plaintiff's claim. Plaintiff alleged that defendant was negligent in failing to provide plaintiff with a reasonably safe place in which to work. And, in plaintiff's principal verdict-directing Instruction No. 1, it was submitted that the "metal bolt or pin was caused and permitted to be and remain at said place by defendant or one of its employees other than plaintiff; that by reason of the presence of said metal bolt or pin said place was not a reasonably safe place for plaintiff to work; * * *" and "that by reason of the aforesaid conditions defendant failed to furnish plaintiff a reasonably safe place in which to work, and that defendant was thereby negligent * * *."

■ As stated, there was substantial evidence tending to show the fact that some employee of defendant other than plaintiff placed or dropped a bolt or pin or other like object on the runway. Proof of such fact also sustained plaintiff's burden of proving defendant's knowledge. The act of the employee was the act of defendant and the defendant was to be charged with knowledge thereof; and, however short the time the object had been on the runway (defendant having knowledge of its presence there), if a jury found, as the jury in this case was required to find, that by reason of the presence of the bolt or pin plaintiff's place of work was not reasonably safe, the jury reasonably could find that defendant negligently failed to perform its nondelegable continuing duty to provide plaintiff a reasonably safe place in which to work. Tash v. St. Louis-San Francisco R. Co., 335 Mo. 1148, 76 S.W.2d 690; Davis v. Buck's Stove & Range Co., 329 Mo. 1177, 49 S.W.2d 47; Busby v. Southwestern Bell Tel. Co., Mo.Sup., 287 S.W. 434; Bodenmueller v. Columbia Box Co., Mo.App., 237 S.W. 879. See also business invitee cases—Van Brock v. First Nat. Bank in St. Louis, 349 Mo. 425, 161 S.W. 2d 258; Savona v. May Department Stores Co., Mo.App., 71 S.W.2d 157; Sears, Roebuck & Co. v. Peterson, 8 Cir., 76 F.2d 243.

In the Tash case it was said [335 Mo. 1148, 76 S.W.2d 696], "It was the nondelegable, continuing duty of defendant to use ordinary care to provide and maintain a reasonably safe place for plaintiff to carry on his work. The alleged violation of that duty of the master is the real gist of this action. The presence of the coal in the passageway was accounted for by plaintiff's evidence. There was evidence from which the jury could find that defendant's employees in charge of maintaining continuous fires in the fifteen or more stoves left there some of the lumps or pieces of coal which they had thrown into the passageway in obtaining coal from the tenders of the coal burning engines. *The act of these employees in this respect was that of the master.*" (Our italics.)

In the Van Brock case, plaintiff, an invitee, fell on some wet slippery substance on the bank-building floor. The defendant Bank contended that plaintiff had failed to make out a case of negligence in that there was no proof that defendant Bank " 'allowed, suffered and permitted water, soap and other slippery substances to accumulate and remain on the floor' ", as alleged; and that there was no proof that defendant Bank "knew" or " 'could have known' " of such condition. [349 Mo. 425, 161 S.W.2d 260.] Of the latter contention this court said, "If it is a legitimate inference that the wet and slippery substance was put there by the bank's employees charged with the duty of cleaning the floors the act and knowledge of such employees would be the act and knowledge of the bank, and the plaintiff thereby sustains her burden of proving notice or facts from which notice follows."

In the Savona case, the duty of defendant, as in the Van Brock case, was to exercise ordinary care to have its premises in a reasonably safe condition for invitee-plaintiff's use. Plaintiff Savona was a customer in defendant's store. Plaintiff had fallen on the wet soapy steps of a stairway within the store. The trial court had entered a judgment of nonsuit; and defend-

ant in support of the trial court's judgment urged there was no showing as to when the water was put on the steps, or that defendant knew that the steps were wet. The reviewing court said [71 S.W.2d 159], "*We have already pointed out that the question of when the water was put upon the steps is not so highly material; the gist of the negligence consisting of the fact that they were allowed to be wet and slippery at the time plaintiff was invited to use them.* Of course, as regards the question of defendant's knowledge of such condition, the situation is quite different. However, under the evidence, the only legitimate inference is that the water was put upon the steps by some one of defendant's employees charged with the duty of cleaning them. No one else could have been concerned with putting soapy water upon an inside stairway. *Consequently, the act of whatever employee put the water upon the steps was the act of defendant itself, and the employee's knowledge was likewise defendant's knowledge.*" (Our italics.)

With regard to the essentiality of the submission of the issue of knowledge or notice, actual or constructive, defendant-respondent has cited the case of Hatfield v. Thompson, supra, 252 S.W.2d 534, 543, wherein plaintiff Hatfield submitted his case to the jury by a verdict-directing instruction requiring the jury to find that " 'the existence of said hole, if you find it did exist, constituted negligence on the part of defendant', * * *." There was evidence tending to show that the hole could have been caused by defendant's workmen, and the hole could have been made any time by any number of agencies other than defendant's workmen. But, as stated, *the instruction did not require a finding by the jury that the hole was made by defendant's workmen,* and neither did the instruction submit the element of defendant's actual or constructive knowledge of the existence of the hole. The instruction given in the Hatfield case was erroneous. The Hatfield opinion tacitly recognizes a distinction between a shown dangerous condition of an

employee's place of work, which condition was due to defendant's act through defendant's agents or servants in the first instance, of which condition defendant must have known, and a dangerous condition which could have been due to some agency other than that of defendant of which condition it must be shown and submitted that defendant had knowledge.

In our case there was evidence tending to show, and the finding was required that the metal bolt or pin "was caused and permitted to be and remain at said place by defendant or one of its employees other than plaintiff; * * *." Now, if defendant through its employee caused and permitted the condition, the act of the employee was the act of defendant. Since, under the evidence, a jury could reasonably find (and the jury must have found) that the bolt or pin was caused and permitted to be and remain on the concrete runway by defendant, the absence of evidence tending to show that the object was "consciously" placed on the runway and the absence of evidence tending to show how long the object had been there was of no significance on the submissibility of plaintiff's case, although the jury no doubt took the absence of such evidence into account in determining whether defendant failed to exercise ordinary care in providing plaintiff a reasonably safe place to work.

We may venture to say that (with respect to the necessity of submitting defendant's knowledge, actual or constructive, of an unsafe or dangerous condition in an employee's place of work) if, as in our case, it is plaintiff's theory and submission and there is substantial evidence tending to support such submission that the condition was due to the act of defendant, then the failure to submit the issue of knowledge or notice is not prejudicial (if the jury is required to find that the condition was created by defendant's own act or agency; that the condition rendered the place of work unsafe or dangerous; and that defendant was thereby negligent in failing to

provide a reasonably safe place in which to work). This is not because the fact of knowledge or notice is not essential in such a case. But it is because, since defendant caused and permitted the condition to obtain, defendant must have had knowledge of it and of the natural and probable consequences thereof. Tash v. St. Louis-San Francisco R. Co., supra, 335 Mo. 1148, 76 S.W.2d 690; Davis v. Buck's Stove & Range Co., supra, 329 Mo. 1177, 49 S.W.2d 47; Bodenmueller v. Columbia Box Co., supra, Mo.App., 237 S.W. 879; and the invitee cases cited supra.

■ Defendant-respondent further attacks plaintiff's Instruction No. 1 on the grounds that it does not require the jury to find that defendant failed in its duty to exercise "ordinary care" to provide plaintiff with a reasonably safe place in which to work; that neither the term "ordinary care" nor any other standard of care is submitted in the instruction; and that there was no submission of the knowledge of the particular employee, who may have caused the bolt or pin to be placed on the runway, that "he was creating danger, or that some person was apt to step on it." The instruction, however, does submit, as noted supra, that by reason of "the (submitted) presence of said metal bolt or pin said place was not a reasonably safe place for plaintiff to work." The instruction, therefore, did not omit a requirement of a finding that the place where plaintiff worked was dangerous or not reasonably safe, as did Instruction No. 1 in Reese v. Illinois Terminal R. Co., Mo.Sup., 273 S.W.2d 217, cited by defendant-respondent. The instruction further submitted "that by reason of the aforesaid conditions defendant failed to furnish plaintiff a reasonably safe place in which to work, and that defendant was thereby negligent." The term "negligence" was defined in plaintiff's Instruction No. 2. We rule adversely the contention that Instruction No. 1 was erroneous in imposing upon defendant "the absolute mandatory duty to provide the plaintiff with a reasonably safe

place in which to work and thus creates a greater burden on the defendant than the law imposes." See and compare Glidewell v. Quincy, O. & K. C. R. Co., 208 Mo.App. 372, 236 S.W. 677.

Although the instruction did not submit to the jury that defendant's employee or defendant should have reasonably anticipated the consequence of injury or had knowledge that "he was creating danger, or that some person was apt to step on it," it was submitted that by reason of the presence of the bolt or pin plaintiff's place of work was not reasonably safe, and that defendant was thereby negligent. These hypotheses or submissions (and the further submission of causation and injury), in our opinion, submitted the elements of actionable negligence (including the element of "foreseeability") in failing to provide or furnish plaintiff with a safe place for his work. Defendant-respondent has cited cases in which the language of the questioned instructions was different. For example, see Long v. F. W. Woolworth & Co., 232 Mo.App. 417, 109 S.W.2d 85, 90, a business invitee case, in which a plaintiff's verdict-directing instruction, although it submitted that a hole in the floor rendered the floor unsafe for ordinary use and that defendant had knowledge of the hole in the floor, it did not in any way submit that defendant was "negligent in maintaining the floor with the hole in it". We are of the opinion that the instant plaintiff's Instruction No. 1, although it may have been imperfect, sufficiently submitted the elements of actionable negligence in failing to provide plaintiff with a reasonably safe place for work; and, if defendant had seen fit, it had the privilege of proffering to the trial court instructions giving more particular information to the jury as to the principles of law applicable to the facts.

We hold the trial court erred in sustaining defendant's motion for a new trial on the specified ground, and we further hold plaintiff's Instruction No. 1 was not prejudicially erroneous.

■ The jury having considered upon their verdict returned into open court with a verdict written on a printed form which had been provided for a verdict in favor of defendant. One Spielman, a juror, had signed at the place provided in the printed form for the signature of a foreman. Immediately below Spielman's signature, there was a verdict written in longhand as follows, "We the undersigned agree to a verdict in favor of the Plaintiff Noah Howard $34,040." This verdict was signed by ten jurors. In the presence of counsel for the parties, the trial judge asked the foreman Spielman, "Just what is your verdict in the case?" The foreman replied, "Verdict for the full amount, verdict for the plaintiff. And one was against it. Eleven to one. Eleven signed it." After a colloquy between the trial judge and counsel for the parties (during which colloquy defendant's counsel requested the trial court to enter a verdict and judgment for defendant or to declare a mistrial, and objected to any action of the court in sending the jury back after they had once brought in a verdict) the trial court directed the jury to return to the jury room and to read the instructions and the forms for verdicts. Ten or fifteen minutes later, and while the jury was in the jury room, it was discovered that the clerk had provided the jury with two forms for a plaintiff's verdict, and no form for a defendant's verdict. The jury was again called from the jury room and informed that the clerk "unintentionally gave you the wrong verdict form." The jury was then provided with a form for a verdict for defendant. The jury again retired to the jury room, and subsequently returned a unanimous verdict in favor of plaintiff assessing his damages at $34,040.

It seems clear to us that the foreman Spielman intended to sign the original verdict for plaintiff, but signed in the wrong place. Therefore, when the first verdict was returned it would seem eleven jurors, including the foreman Spielman, intended to render a verdict for plaintiff in the sum

of $34,040. Now when the case was again submitted to the jury there was another inadvertence—this time on the part of the clerk in failing to provide the jury with a form of verdict for defendant. It seems to us that, at most, these after-trial incidents were but irregularities, and were not prejudicial. Apparently the trial court was of the same view. We can see nothing in the record indicating the trial judge in any way advised the jury as to what or for whom the verdict should be.

We have read the case of Dayton Folding Box Co. v. Danciger Bros., 138 Mo.App. 17, 119 S.W. 997, cited by defendant-respondent, wherein the trial court granted a new trial. In that case, an action in which plaintiff's claim was stated in two counts, the trial judge had orally advised the jury (after the jurors had been unable to agree upon a verdict) that a particular instruction (No. 3) authorized the jury to find against plaintiff on the one count and for the plaintiff on the other. The order granting the new trial in the Danciger case was manifestly right, and was affirmed. The oral statement by the trial judge in that case was clearly subject to interpretation as advice to the jury to return a verdict for plaintiff.

Defendant-respondent further contends the amount of the jury's award, $34,040, was grossly excessive.

Plaintiff, a helper and car man fifty-seven years old and in good health when he was injured, April 21, 1952, having stepped on a bolt or pin, was caused to pitch forward and fall. His left knee and left side struck the concrete runway. He was put on a stretcher and conveyed by ambulance to a hospital in Paragould. Thirty-six hours later he was taken by ambulance and train to the Missouri Pacific Hospital in St. Louis where he remained from April 23d to July 5th. Plaintiff was in traction for sixty days, after which he was in a cast "from his toes to up under" his ribs on the left side until the middle of September, 1952, although he used a "walker" at his home where he had been since July 5th. When

the cast was removed, plaintiff used crutches for a year, after which he has used a cane.

Plaintiff had sustained a comminuted fracture of the lower third of the femur of his left leg. The fracture extended into the knee joint. There were four different and distinct fragments at the fracture site. A steel pin was thrust through his left leg below the knee, and the leg suspended in traction for sixty days, as stated. There remains a "bowing" of the bone at the fracture site with a three-eighths to one-half inch overriding of the fragments, and "no healing" or "dead spaces" between the fragments. There is definite evidence of continuing calcification from the femur to the kneecap. The kneecap is in a fixed position, and there is evidence of ankylosis within the knee joint. The bone below the fracture was affected and the muscles of the lower left leg are atrophied. He is unable "to squat, stoop, or bend on that leg." He has continuously experienced pain in his leg, knee and ankle—"at times it is just dull, aching pain, and another time it is a sharp, cutting pain."

Plaintiff has but a "seventh-grade" education; and a physician testified that in his opinion plaintiff is permanently disabled from performing manual labor.

Defendant-respondent has cited Turner v. Central Hardware Co., 353 Mo. 1182, 186 S.W.2d 603, 158 A.L.R. 1402, decided in 1945. Plaintiff Turner, fifty-seven years old, had sustained a comminuted fracture of the left tibia. His injury was serious and painful and required surgery. A verdict of $15,000 was reduced to $10,000. However, Turner's loss of wages and medical expenses aggregated $1,850, whereas in our case plaintiff Howard's loss of earnings at the time of trial was approximately $12,250. Turner's wage was $50 per week; Howard's was about $90 per week. And, as stated, there is evidence that plaintiff Howard is permanently disabled from doing manual work, and is not an educated man with experience or training for any vo-

cation other than that of a manual laborer. In Pettis v. St. Louis Public Service Co., Mo.Sup., 240 S.W.2d 909, cited by defendant-respondent, the trial court had required a substantial remittitur reducing the judgment to $18,500. This court merely held the amount of the judgment, $18,500, was not excessive. In Hill v. St. Louis Public Service Co., 359 Mo. 220, 221 S.W.2d 130, cited by defendant-respondent, plaintiff Hill was a boy fourteen years old. A remittitur of $7,500 was required reducing a verdict of $22,500 to $15,000. Obviously, there was no showing that plaintiff suffered a loss of earnings.

In Cruce v. Gulf, Mobile & O. R. Co., 361 Mo. 1138, 238 S.W.2d 674, plaintiff Cruce, sixty-two years old, had worked as a section man earning $260 a month. He sustained a fracture of the left femur with treatment and residual effects, somewhat comparable to the injury suffered by plaintiff. Plaintiff Cruce also suffered an aggravation of a preexisting arthritic condition; and was using, at the time of trial, a steel brace to stabilize his seriously injured knee. The original verdict in the Cruce case was $52,500. The trial court required a remittitur of $12,500. This court thought there was no merit to defendant's contention that the $40,000 judgment "is still excessive." Although the injury plaintiff Cruce sustained was more serious and perhaps more painful than the injury sustained by plaintiff Howard, the effect of the injuries to the respective plaintiffs as to their ability to earn was very much the same.

Having taken into account the factors this court recognizes in treating with the question of excessiveness of an award, we cannot say that the instant verdict was grossly excessive.

The order granting a new trial should be reversed, and the cause should be remanded with directions to reinstate the verdict and judgment for plaintiff.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.